## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SUSAN DOHERTY, on behalf of herself, and all others similarly situated, | : : : : |
| Plaintiff, | : Civil Action No. : 1:10-cv-00359 (NLH)(KMW) : |
| v. | : **OPINION** : |
| THE HERTZ CORPORATION, AMERICAN TRAFFIC SOLUTIONS, INC., and PLATEPASS, LLC, | : : : : |
| Defendants. | : : : |

**APPEARANCES**:

Wesley Glenn Hanna, Esq.
Sander D. Friedman, Esq.
Friedman Doherty, LLC
125 North Route 73
West Berlin, NJ 08091
*Attorneys for Plaintiff Susan Doherty*

Michael J. Vassalotti, Esq.
Brown & Connery, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
*Attorney for Defendants The Hertz Corporation, American Traffic Solutions, Inc., and PlatePass, LLC*

**HILLMAN, District Judge**:

This matter comes before the Court by way of the motion filed by defendants, The Hertz Corporation, American Traffic Solutions, Inc. and PlatePass, LLC seeking to dismiss the amended complaint of plaintiff, Susan Doherty.  For the reasons expressed below, defendants' motion will be denied in its entirety.

## I.   JURISDICTION

1

This Court has original jurisdiction over this action under 28 U.S.C. §§ 1332(d)(2), (5), and (6), which provide such jurisdiction over class actions in which the amount in controversy exceeds $5,000,000, the proposed class of plaintiffs includes at least 100 members,[1] and any member of the alleged plaintiff class is a citizen of a State different from any defendant.

Doherty is a citizen of the State of New Jersey.  American Traffic Solutions, Inc. is a Kansas corporation with its principal place of business in Scottsdale, Arizona.  The amount in controversy is in excess of $5,000,000.

## II.   BACKGROUND[2]

To begin, an introduction of the relevant parties is beneficial.  Defendants are The Hertz Corporation, American Traffic Solutions, Inc., and PlatePass, LLC.  The Hertz Corporation ("Hertz") is a corporation engaged in the business of renting cars.  American Traffic Solutions, Inc. ("ATS"), is a corporation engaged in the business of implementing and maintaining cameras and electronic toll enforcement programs on

---

[1] Plaintiff claims that the proposed class may include "tens of thousands of customers who were charged for the PlatePass system."  (Amend. Compl. ¶ 59).

[2] Given that the present matter comes before the Court by way of defendants' Motion to Dismiss, Doherty's allegations are accepted as true and viewed in a light most favorable to her as the nonmoving party, as is required when reviewing a motion to dismiss.  See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).

roads and highways throughout the country.  PlatePass, LLC ("PlatePass") is a corporate subsidiary and/or registered trademark of ATS that provides an electronic toll payment service that enables rental car customers to use the high-speed, cashless electronic toll lanes on roads and highways.

Plaintiff, Susan Doherty,[3] rented a vehicle from Hertz after she was involved in a traffic accident on September 23, 2009 and left without her own car.  To effectuate the rental, Doherty entered into a written rental contract with Hertz.  She signed three documents that comprised the rental agreement.  First, she signed a document entitled "Terms and Conditions," which provided, among other things, that Doherty may be billed for tolls she incurred while using the rental vehicle and any administrative fees related to the cost of collection.  Second, she signed a document entitled "Rental Record," which, like the Terms and Conditions, authorized the disclosure of Doherty's billing information to ATS for toll collection purposes.  Finally, Doherty signed documentation concerning the condition of the vehicle.  According to Doherty, the Terms and Conditions provided that only the documents signed by Doherty constituted the agreement for the rental of the vehicle.  None of these three signed documents ever mentioned PlatePass, automatic or electronic toll collection services, or a flat, per diem

---

[3] Susan Doherty seeks to bring this class action suit on behalf of herself and all others similarly situated.

administrative fee.

About a day after the initial transaction, Doherty exchanged her rental car for another.  At that time, a Hertz representative informed Doherty that the terms of her initial agreement would not change and that her rental transactions would be treated as one continuous rental.  When Doherty entered the rental vehicle, she noticed a PlatePass transponder device on the windshield with a notice stating that a toll is charged to the credit card used for the car rental.  The notice made no mention of administrative fees.

On October 6, 2009, Doherty returned the second car after having used the PlatePass service to pay tolls on nine separate days during her approximate two-week rental period.  When she returned her vehicle to Hertz, she received a statement of charges, showing the amount that she had paid for the rental and a number of fees and surcharges.  The statement did not set forth any fees related to tolls or toll collection.

Shortly thereafter, Doherty received a bill from PlatePass that represented that she owed a small fee for the cash price of tolls and administrative fees.  The invoice also had a notice declaring an administrative fee policy by which the rental car customer would be charged the cash prices for tolls and a $2.50 per diem service fee, with a maximum fee charge of $10 per week. According to the bill, Doherty owed a total amount of $3.25.

While the invoice provided no indication that anything other

4

than the small amount was owed or that Doherty's bank account would be accessed, on October 13, 2009, PlatePass deducted $77.75 directly from Doherty's account without any further notice or authorization.  Doherty referenced PlatePass' website and learned that she had been charged $57.75 for tolls at the cash price and $20 in administrative fees.  She also discovered that, according to the website and in contradiction to the invoice, the maximum fee that could be charged to Doherty was $10 per month, not per week.

On or around December 10, 2009, Doherty filed a complaint against Hertz, ATS, and PlatePass in the Superior Court of New Jersey.  Defendants removed Doherty's action to this Court. Doherty amended her complaint and now alleges breach of contract, unjust enrichment, conversion, consumer fraud, and civil conspiracy against defendants.  Among her litany of allegations, Doherty avers that defendants impermissibly charged her the posted cash amount for tolls rather than the less expensive, electronic toll fee that was actually charged.  She also alleges that the PlatePass electronic toll services were not adequately disclosed in the parties' agreement, and that defendants impermissibly imposed administrative fees for times and amounts that were never disclosed or were misrepresented.

On or around April 2, 2010, defendants filed a Motion to Dismiss Doherty's amended complaint for failure to state a claim upon which relief may be granted.

## III. DISCUSSION

### A.   Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)).  Under the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis.  First, a claim's factual and legal elements should be separated; a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950).

6

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." Id.; see Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." (quoting Twombly, 550 U.S. at 556)). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

**B.   Breach of Contract**

Defendants argue that Doherty's amended complaint cites language in the rental agreement that expressly permits defendants to charge for tolls and administrative fees, and her pleaded facts demonstrate that she was properly charged under the rental agreement for use of the electronic toll payment service. Because the rental agreement's terms are clear and unambiguous, defendants argue, Doherty cannot create ambiguity where it does not exist.

7

Doherty claims that defendants breached the contract when, among other things, they charged her undisclosed administrative fees and charged her more than the tolls charged to the car. Doherty contends that defendants' reading of the contractual agreement is wrong and that, in any event, a factual question exists as to the contract's proper construction and scope.

To establish a breach of contract claim, a plaintiff must show that (1) the parties entered into a valid contract, (2) the defendant did not perform its obligations under the contract, and (3) the plaintiff suffered damages as a result. Murphy v. Implicito, 920 A.2d 678, 689 (N.J. App. Div. 2007) (citation omitted).

Turning to the terms of the documents that Doherty signed, which comprised the rental agreement, the Terms and Conditions stated:

> 13.a. PAY YOUR TICKETS/TOLLS IMMEDIATELY: You will be responsible for and pay all parking or traffic violation fines and penalties, all towing, storage and impoundment fees and all tolls and tickets charged to the Car during the rental period.  You authorize Hertz to release your rental and charge card information to its designated vendor "American Traffic Solutions" for the exclusive purpose of processing and billing for fines, penalties and fees.  You also agree to indemnify Hertz or American Traffic Solutions if they pay same.  You agree to pay, upon billing, an administrative fee related to the cost of collection or cost of providing information about You to a court or governmental agency for each unpaid parking, toll or other citation incurred during the term of this rental.

(Amend. Compl. ¶ 17).  The only portion of the Rental Record concerning toll collection provided:

> You authorize us to release your rental and charge card information to our designated vendor, American Traffic Solutions for the exclusive purpose of processing and billing tolls, parking or traffic violations fines and . . . penalties and related administration fees incurred during the term of your rental.

(Amend. Compl. ¶ 19).

The Court begins with the assumption, which appears uncontested, that the written agreement between the parties at the time of contracting obligated Doherty to pay her own tolls, whether she did so in cash or by taking advantage of the PlatePass transponder device equipped in the rental vehicle. Stated differently, the Court does not understand Doherty's breach of contract claim to encompass a claim that defendants agreed by contract to assume the cost of the tolls.[4]  The Court also proceeds from the assumption that Doherty has acknowledged or would acknowledge that if she did not pay the tolls in cash and those tolls were paid by the PlatePass system, or some other means, that she was obligated by contract to reimburse defendants for the toll actually charged to the car.

Rather, the Court construes Doherty's contractual claim to

---

[4] To the extent that Doherty alleges that she was not liable to pay for any of the tolls that she incurred through the use of her rental vehicle's electronic toll payment service, that portion of her claim is dismissed as inconsistent with her express agreement to pay the tolls.

contain two elements: (1) that the agreement only allowed defendants to charge administrative fees when Doherty breached her obligation to pay tolls when due, and (2) that the agreement only allowed defendants to seek reimbursement for the tolls actually charged to the rental car without any additional "up-charges."  In essence, the Court reads Doherty's amended complaint to allege that she was overcharged for tolls and impermissibly billed for any and all administrative fees in breach of the written agreement between the parties.  With respect to those latter two claims, the Court finds that Doherty has pleaded plausible causes of action for breach of contract.

More specifically, Doherty asserts that her contract with defendants did not permit them to charge administrative fees merely for her use of the electronic toll payment service. Rather, she submits, administrative fees could be imposed only for whatever efforts would be necessary to collect an unpaid toll.  The Court agrees that a reading of the contract provisions, in pari materia, demonstrates that Doherty has stated a colorable claim.  A reasonable interpretation of the Terms and Conditions and the Rental Record, when read together, is that defendants could charge administrative fees only for the cost of collecting an unpaid toll whenever a customer breached her duty to pay for the toll herself -- not that a fee could be charged simply for the customer's use of the electronic toll payment service.  In other words, the contract fails to provide adequate

10

notice about the applicability of the fees, and the occasions on and mechanisms through which they may be charged.

While Doherty should have known that she would have to reimburse any tolls justly charged to the defendants through the electronic toll payment service or other means, nothing in the contract indicates, expressly or unequivocally, that she would be responsible for administrative fees merely for availing herself of the convenience of the service.  Moreover, because there is no suggestion that Doherty failed to pay for the tolls, defendants certainly did not have to undertake any collection efforts themselves.  Accordingly, Doherty has stated a viable claim for breach of contract with respect to defendants' billing of administrative fees.[5]

---

[5] As part of her argument against the imposition of administrative fees, Doherty contends that she was impermissibly charged a fee even on those days that she did not use the electronic toll payment service.  We need not address the issue of "excessive fees" at this time except to note the following. As we noted above, the contract is silent as to what administrative fees may be imposed and under what circumstances. If Doherty prevails on her claim that the contract did not allow for the imposition of any administrative fees whatsoever in those cases in which the toll was paid at the time of assessment, a claim for excessive fees is redundant.  If, and only if, defendants ultimately prove that they were entitled under the contract to charge Doherty administrative fees will the Court need to address whether the contract itself, the relative bargaining positions of the parties, or other principles of contract law applicable to these facts, place some limit on the amount of fees and under what circumstances those fees may be charged.  Here, however, we hold only that Doherty has stated a viable breach of contract claim relating to the imposition of any and all administrative fees in this case.  In light of our decision to let this claim go forward and the fact that such a claim is closely intertwined with Doherty's consumer fraud claim,

In addition, the Court construes Doherty's complaint to include a claim that defendants breached the written contract by charging an amount for the tolls themselves in excess of the amount actually charged by the toll collector to her rental vehicle.  Doherty alleges that as part of the electronic toll payment service, defendants received a discounted toll charge, yet billed her the more expensive, cash price of the tolls.  If, in fact, defendants' electronic toll payment service was credited with a discount but defendants nevertheless charged Doherty more than the actual cost of the tolls incurred by the service, Doherty may have a viable claim for breach of contract.  Again, nothing in the contract appears to us to suggest or state that Doherty would be responsible for a greater amount of tolls than the amount actually incurred by the electronic service that she utilized.  On the contrary, it is reasonable to read the contract as only requiring Doherty to pay the amount of tolls that were actually charged through the electronic toll payment service or other means.[6]

Therefore, the Court concludes that based on the plain

---

we need not address the issue of excessive fees as a breach of contract claim at this time.

[6] Defendants do not appear to deny that tolls charged through the electronic toll payment service may have been discounted from the normal, cash price of tolls.  However, if defendants can show that no such discount is credited to tolls paid through the service, then they may seek to dismiss or be awarded judgment on that particular claim by Doherty.

language of the parties' contractual agreement -- assuming
arguendo the contract's validity -- Doherty has stated a claim
for breach of contract upon which relief may be granted with
respect to defendants' imposition of administrative fees and
alleged up-charge of tolls.  For the reasons stated above,
defendants' Motion to Dismiss Doherty's breach of contract claim
is denied.

**C.   Unjust Enrichment**

Defendants argue that where there is an express contract
covering the identical subject matter of the claim, Doherty
cannot pursue a quasi-contractual claim for unjust enrichment.
Defendants further contend that the rental agreement shows that
they were entitled to collect the contested fees and charges, and
there was no unjust benefit conferred upon them.

Doherty claims that the rental agreement does not allow
defendants to impose administrative fees in connection with
automatic toll collections unless certain costs were incurred nor
may they up-charge on discounted tolls.  Doherty asserts that
there was no mutual assent in the contractual provisions
concerning administrative fees and toll up-charges, and that such
fees and charges were extra-contractual.  Moreover, Doherty
posits that the parties' contract is void for unconscionability.
Thus, when defendants charged Doherty for undisclosed
administrative fees and up-charged tolls, defendants were

unjustly enriched at her expense and beyond the scope of a possibly void contract.

To establish a cause of action for unjust enrichment, a plaintiff must show that "defendant(s) received a benefit and that retention of that benefit without payment would be unjust." Goldsmith v. Camden County Surrogate's Office, 975 A.2d 459, 462 (N.J. App. Div. 2009) (citation and internal quotation marks omitted). Indeed, "[u]njust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." Id. at 463 (citation and internal quotation marks omitted). While a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim, a plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts. See Fed. R. Civ. P. 8(d)(2) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."), (3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); Shankman v. State, 876 A.2d 269, 280 (N.J. 2005) (noting that "it is well settled" that plaintiffs "may plead alternative or inconsistent claims" (citing N.J. Ct. R. 4:5-6)); Caputo v. Nice-Pak Prods., Inc., 693 A.2d 494, 497 (N.J. App. Div. 1997).

At this stage, Doherty may plead alternative legal theories. If the rental agreement is later found void for lack of mutual

14

assent or unconscionability, then Doherty may proceed with her unjust enrichment claim.  Alternatively, if a valid written contract existed on the terms she claims, then the existence of this contract would prevent Doherty from asserting a claim of quasi-contractual liability.  For now, Doherty may advance her claim of unjust enrichment.

For the reasons stated above, defendants' Motion to Dismiss Doherty's unjust enrichment claim is denied.

### D.  Conversion

Defendants argue that Doherty's conversion claim sounds in tort and is barred as a matter of law because this case arises out of an undisputed contractual relationship and defendants did not owe any independent duties to Doherty.  Further, defendants posit that Doherty, by agreeing to the contract and its clear language, authorized defendants to bill her bank account for fees and charges.

Doherty claims that she has a property interest in her bank account, and that defendants deprived her of her property by charging her account without notice or authorization.  She contests defendants' assertion that the contract explicitly allows defendants, specifically PlatePass, to withdraw money from her account without more express authorization.

Conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion

of an owner's rights." LaPlace v. Briere, 962 A.2d 1139, 1144-45
(N.J. App. Div. 2009) (quoting Barco Auto Leasing Corp. v. Holt,
548 A.2d 1161, 1164-65 (N.J. App. Div. 1988)), certif. denied,
970 A.2d 1049 (2009).  Although it is an intentional tort, a
defendant need not knowingly or intentionally act wrongfully for
a conversion to occur.  Id. at 1145.  Moreover, a plaintiff may
plead alternative or inconsistent legal theories, such as breach
of contract and conversion.  See Fed. R. Civ. P. 8(d)(2), (3);
Shankman, 876 A.2d at 280; Caputo, 693 A.2d at 497.

        While defendants contend that Doherty's conversion claim
cannot stand because a tort remedy does not arise from a
contractual relationship, Doherty may plead in the alternative at
this stage in the litigation.  Doherty's complaint states that
only the three signed documents constitute the entire rental
agreement, and that the agreement never mentions a flat, per diem
fee or PlatePass' electronic toll collection services.  Doherty
argues that through the pretext of the signed rental agreement
with Hertz and ATS, PlatePass withdrew funds from Doherty's
account without notice or authorization.  Moreover, Doherty
elsewhere suggests that the contract may be void due to lack of
mutual assent or unconscionability.  Thus, Doherty has at least
stated a colorable claim of conversion against defendants,
assuming arguendo the invalidity of the contract.

        For the reasons stated above, defendants' Motion to Dismiss
Doherty's conversion claim is denied.

**E.    Consumer Fraud**

Defendants argue that Doherty has not pleaded an unlawful practice under consumer protection law because her amended complaint demonstrates that defendants disclosed in the rental agreement all fees and charges.  Defendants also assert that Doherty has failed to plead facts that, if proven true, would evince that defendants knowingly concealed the administrative fees with the intent of inducing Doherty's reliance upon the alleged omission.

Doherty claims, among other things, that defendants misrepresented and did not disclose certain pertinent information and committed unconscionable practices by failing to make clear: (1) the connection between PlatePass, the electronic toll payment services, and the administrative fee policy; (2) the amount of administrative fees, the manner in which they are calculated, and the occasions on which they are assessed; (3) whether the rental involving two vehicles would be treated as a single transaction for billing purposes; and (4) whether she would be charged the discounted cost of tolls that defendants incurred or the more expensive cash value of the tolls.

The New Jersey Consumer Fraud Act (CFA) "imposes liability on any person who uses: 'any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon

17

such concealment.'"  Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 929 A.2d 1076, 1086 (N.J. 2007) (quoting N.J.S.A. § 56:8-2); see Furst v. Einstein Moomjy, Inc., 860 A.2d 435, 440 (N.J. 2004) (same).  In analyzing claims under the CFA, there are only three elements required for prima facie proofs: (1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  Merck & Co., 929 A.2d at 1086.

Accepting Doherty's pleadings as true as is required at this stage of litigation, she has asserted facts that may establish a prima facie case of consumer fraud.  First, Doherty has alleged facts that, if true, could demonstrate unlawful conduct by defendants.  For example, if defendants charged Doherty for undisclosed fees and up-charged tolls, or misrepresented the applicability of those fees, then defendants may have committed consumer fraud.[7]  Moreover, for those omissions or non-disclosures that require intent or knowledge to constitute an unlawful practice, Doherty highlights the timing, manner, and incongruity of the notices that she received and pointedly suggests that lack of any earlier or comprehensive disclosures --

_____

[7] Again, defendants argue that the plain language of the contract precludes any notion that they attempted to deceive Doherty.  While defendants may ultimately be proven right, for the same reasons that the breach of contract claim may survive this motion at this time, so too must this consumer fraud claim.

for the per diem administrative fee charge, for example -- may evince the intent or knowledge to conceal or omit a material fact.  Second, Doherty has shown an ascertainable loss by explaining the exact fees and charges that were allegedly undisclosed or misrepresented, but were still charged to her account.  Finally, Doherty has asserted facts that show a causal connection between the unlawful conduct and the ascertainable loss when she averred that she was charged for non-disclosed and misrepresented fees and charges through the pretext of her rental agreement with Hertz.

For the reasons stated above, defendants' Motion to Dismiss Doherty's consumer fraud claim is denied.

### F.   Civil Conspiracy

Defendants argue that Doherty's civil conspiracy claim must fail because her other underlying claims are barred as a matter of law.  Thus, Doherty has failed to plead any underlying wrongdoing that could form the basis of a civil conspiracy claim.

Doherty claims that defendants entered into a conspiracy to overcharge Hertz rental customers for tolls and to impose administrative fees for electronic toll services without first providing sufficient notice and information.  Doherty concludes that her civil conspiracy claim must survive because her other claims also withstand the motion to dismiss.

A civil conspiracy is "a combination of two or more persons

19

acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." G.D. v. Kenny, 984 A.2d 921, 934 (N.J. App. Div. 2009) (citation and internal quotation marks omitted).  "To establish a conspiracy, the plaintiff must demonstrate that there was one plan and that its essential scope and nature was known to each person who is charged with responsibility for its consequences." Weil v. Express Container Corp., 824 A.2d 174, 183 (N.J. App. Div. 2003).

    However, a plaintiff need not prove that the unlawful agreement was express, as long as the plaintiff alleges that each participant shared in "the general conspiratorial objective." Morgan v. Union County Bd. of Chosen Freeholders, 633 A.2d 985, 998-99 (N.J. App. Div. 1993) (citation and internal quotation marks omitted).  The plaintiff need not provide direct evidence of the conspirators' agreement; it is enough that it could be circumstantially inferred from the facts that the conspirators had reached an understanding.  Id. at 998.  "The actionable element is the tort which the defendants agreed to perpetrate and which they actually committed."  See Landriani v. Lake Mohawk Country Club, 97 A.2d 511, 511 (N.J. App. Div. 1953). Accordingly, "the conspiracy is not the gravamen of the charge, but merely a matter of aggravation, enabling the plaintiff to

recover against all the defendants as joint tortfeasors." Eli
Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 496-97 (D.N.J.
1998) (applying New Jersey law) (citation and internal quotation
marks omitted).

Doherty has established a prima facie case of civil
conspiracy.  Doherty has successfully pleaded facts supporting
claims of conversion and consumer fraud.  Assuming arguendo that
either of those claims may be meritorious, it can be inferred
from Doherty's pleaded facts that defendants may have reached an
understanding to commit an unlawful act.[8]

For the reasons stated above, defendants' Motion to Dismiss
Doherty's civil conspiracy claim is denied.

**IV.  CONCLUSION**

For the foregoing reasons, defendants' Motion to Dismiss
Doherty's amended complaint is denied in its entirety.  An Order
consistent with this Opinion will be entered.


Date: November 24, 2010                  /s/ NOEL L. HILLMAN
At Camden, New Jersey            Hon. Noel L. Hillman, U.S.D.J.

---

[8] Both parties seem to assume that a party can conspire to
breach a contract.  This Court, however, construes a civil
conspiracy claim to assert a cause of action only in relation to
an underlying, independent tort claim.  See Eli Lilly and Co., 23
F. Supp. 2d at 496 ("A civil action for conspiracy is essentially
a tort action.").  Thus, there can be no action in civil
conspiracy for breach of contract or unjust enrichment because
neither claim sounds in tort.