## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DWIGHT SIMONSON, SUSAN DOHERTY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HERTZ CORPORATION, AMERICAN TRAFFIC SOLUTIONS, INC., and PLATEPASS LLC<br>Defendants. | Civil Action No. 1:10-cv-00359-NLH-KMW |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Submitted by:

COHEN, PLACITELLA & ROTH, PC
Christopher M. Placitella, Esq.
Michael Coren, Esq.
127 Maple Avenue
Red Bank, NJ 07701-1717
(732) 747-9003
*Attorneys for Plaintiffs and the Class*

Of Counsel:

Steven R. Jaffe, Esq.
Mark S. Fistos, Esq.
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
(Admitted *pro hac vice*)
*Attorneys for Plaintiffs and the Class*

Stephen A. Dunn, Esq.
EMANUEL & DUNN, PLLC
Post Office Box 426
Raleigh, North Carolina 27602
(919) 832-0329
(Admitted *pro hac vice*)
*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      PRELIMINARY STATEMENT ............................................................................... 1

II.     HISTORY OF THE LITIGATION ............................................................................ 1

   A.   The Parties Pursued their Positions Zealously ................................................... 2

   B.   The Parties Conducted Substantial Factual Investigation Before Settling ......... 3

   C.   The Parties Negotiated this Settlement at Arms-Length .................................... 4

II.     SETTLEMENT TERMS .......................................................................................... 6

III.    ARGUMENT .......................................................................................................... 10

   A.   The Settlement Class Should Be Certified ......................................................... 11

      1.   The Requirements Of Rule 23(A)(1)-(4) Are Met ...................................... 13

         (a)    Numerosity Exists ................................................................................ 13

         (b)    Commonality Exists ............................................................................. 13

         (c)    Typicality Exists .................................................................................. 14

         (d)    Adequacy of Representation Exists ..................................................... 15

      2.   The Requirements of Rule 23(b)(3), Fed. R. Civ. P. are met ..................... 16

         (a)    Common Questions Predominate ......................................................... 17

         (b)    Class Treatment of Plaintiffs' Claims is Superior ............................... 18

   B.   The Settlement is Fair, Reasonable, and Adequate ........................................... 21

      1.   The Stage of the Proceedings and Discovery Favor Approval .................... 22

      2.   The Complexity and Likely Duration of the Litigation Favor Approval ..... 23

      3.   The Risks of Establishing Class Certification, Liability and Damages Favor Approval. 25

      4.   The Reaction of the Class to the Settlement Favors Approval .................... 27

      5.   The Ability of the Defendants to Withstand a Greater Judgment ................ 39

      6.   The Settlement Falls Well Within the Range of Reasonableness in Light of All the
           Attendant Risks of Litigation Favors Approval ......................................... 39

   C.   The Best Practical Notice was Provided to the Settlement Class ...................... 40

      1. Dissemination of the Notice ......................................................................... 41

      2. Content of the Notice .................................................................................... 43

VI.     CONCLUSION ....................................................................................................... 44

i

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc.*, v. *Windsor*, 521 U.S. 591 (1997) ......................................... 12, 17, 19, 20

*Baby Neal v. Casey,* 43 F.3d 48 (3d Cir. 1994) .............................................................. 13, 14, 15

*Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 16704 (S.D. Ohio Feb. 21, 2008) ............ 28, 32

*Batmanghelich v. Sirius XM Radio, Inc.*, 2011 U.S. Dist. LEXIS 155710 (C.D. Cal. Sept. 13, 2011) ............................................................................................................................ 31

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) ............................................................. 22, 28

*Boone v. City of Phila.*, 668 F.Supp.2d 693 (E.D.Pa. 2009) ........................................................ 11

*Bower v. MetLife, Inc.*, 2012 U.S. Dist. LEXIS 149117 (S.D. Ohio Oct. 17, 2012) ................... 31

*Bullock v. Administrator of Kircher's Estate,* 84 F.R.D. 1 (D.N.J. 1979) .................................... 23

*Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540 (D.N.J. 1999) ............................................ 13

*Careccio v. BMW of N. Am. LLC*, 2010 U.S. Dist. LEXIS 42063 (D.N.J. Apr. 29, 2010) .......... 23

*Cassese v. Williams*, 503 Fed. Appx. 55 (2d Cir. N.Y. 2012) ..................................................... 29

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) .................................................... 36

*Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546 (D.N.J. 2010) ................................................ 36

*Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373 (D.N.J. 2012) .............................................. 28

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 (1st Cir. 1999) ................................... 36

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974) ................................................................... 41

*Fournigault v. Independence One Mortg. Corp.*, 234 F.R.D. 641 (N.D. Ill. 2006) ..................... 20

*Freebird, Inc. v. Merit Energy Co.*, 2012 U.S. Dist. LEXIS 173075 (D. Kan. Dec. 6, 2012) ...... 37

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ................................................................ 11, 21, 34

*Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir. 1975) ................................ 43

*Hassine v. Jeffes,* 846 F.2d 169 (3d Cir. 1988) ............................................................. 15

*Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013) ........................................................................................................ 27, 38

*Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912 (3d Cir. 1992) ........................................... 15

*In re AT & T Corp.,* 455 F.3d 160 (3d Cir. 2006) ............................................................. 21, 22

*In re AT & T Mobility Wireless Data Services Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011) ........................................................................................................ passim

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ....................................................... passim

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.,* 269 F.R.D. 468 (E.D.Pa. 2010) ... 39

*In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005) ................................................. 11, 12, 17

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 U.S. Dist. LEXIS 131775 (W.D. Ky. Dec. 13, 2010) ..................................................................................... 36

*In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389 (D.N.J. 2006) ............................. 23

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ........................................................................................................ 10, 21, 26, 27

*In re Initial Public Offering Sec. Litig.*, 728 F.Supp.2d 289 (S.D.N.Y.2010) ............................... 36

*In re Ins. Brokerage Antitrust Litig.*, 2013 U.S. Dist. LEXIS 108042 (D.N.J. Aug 1, 2013) ....... 30

*In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92 (D.N.J. 2012) .......................................... 19, 20, 27

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009). ......................................... 11

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 2010 U.S. Dist. LEXIS 121684 (E.D. Wis. Oct. 28, 2010) ............................................................................. 37

*In re LG/Zenith Rear Projection TV Class Action Litig.*, 2009 U.S. Dist. LEXIS 13568 (D.N.J. Feb. 18, 2009) ......................................................................................... 22, 40, 42

*In re LifeUSA Holding Inc.*, 242 F.3d 136 (3d Cir. 2001) ........................................................... 26

*In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633 (D.N.J. 2004) ..................................... 25

*In re Mercedes-Benz Tele Aid Contract Litig.*, 2011 U.S. Dist. LEXIS 101995 (D.N.J. Sept. 9, 2011) ......................................................................................................................... 23

*In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) ................. 14, 16, 17

*In re Merck & Co. Vytorin ERISA Litig.*, 2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010).. 22

*In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287 (D.N.J. May 14, 2012) .......... 28

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216 (D.N.J. 1997) .............. 41

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D.N.J. 1997) ........... 43

*In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 124269 (D.N.J. Dec. 8, 2008) ....................................................................................................................... 31, 32

*In re Sch. Asbestos Litig.*, 921 F.2d 1330 (3d Cir. 1986)............................................................ 11

*In re United Health Group Inc. PSLRA Litig.*, 643 F.Supp.2d 1107 (D.Minn.2009).................. 36

*In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25067 (D.D.C. 2000) ........................... 10

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004);.................................. passim

*Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283 (3d Cir. 1998) ............................................................... passim

Lonardo v. Travelers Indemnity Co., 706 F. Supp. 2d 766 (N.D. Ohio 2010)............................. 10

*Martin v. Foster Wheeler Energy Corp.*, 2008 WL 906472 (M.D. Pa. Mar. 31, 2008) ............... 30

*McLennan v. LG Elecs. USA, Inc.*, 2012 U.S. Dist. LEXIS 27366 (D.N.J. Feb. 29, 2012) ... 29, 39

iv

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.,* 618 F.3d 988 (9th Cir. 2010) ................................................................................................................... 31, 34

*New Directions Treatment Servs. v. City of Reading,* 490 F.3d 293 (3d Cir. 2007).................... 16

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)............................................................. 39

*Pro v.* Hertz Equip. Rental Corp., 2013 U.S. Dist. LEXIS 86995 (D.N.J. June 30, 2013) ... 10,21, 22

*Silverman v. Motorola, Inc*., 2012 U.S. Dist. LEXIS 63477 (N.D. Ill. May 7, 2012)................. 31

*Stair v. Thomas & Cook*, 254 F.R.D. 191 (D.N.J. 2008). ...................................................... 31, 32

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)........................................................ 13

*Stoetzner v. U.S. Steel Corp*., 897 F.2d 115 (3d Cir. 1990) ........................................ 28

*Sullivan v. DB Investments, Inc*., 667 F.3d 273 (3d Cir. 2011) .............................................. 17, 19

*United States v. Marcus*, 560 U.S. 258 (U.S. 2010) ...................................................... 37

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) ............................ 22, 28, 41

*Vollmer v. Selde*n, 350 F.3d 656 (7th Cir. 2003) ........................................................ 36

*Wal-Mart v. Dukes*, 131 S.Ct. 2541 (2011) .............................................................. 18

*Weiss v. Mercedes-Benz of N. Am.,* 899 F. Supp. 1297 (D.N.J. 1995) .................................. 25, 28

*Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239 (3d Cir. 1975)........................................ 16

*Zimmer Paper Products, Inc. v. Berger & Montague, P.C.,* 758 F.2d 86 (3d Cir. 1985) ........... 42

## Other Authorities

Rubensten, William B., *Class Action Fee Procedures*, 5 Class Action Attorney Fee Digest 3 (January 2011) ................................................................................................. 32

## Rules

*Fed. R. C. P.* 23(c)(2).................................................................................................... 40

*Fed. R. Civ. P.* 23 (a)(2) ........................................................................................ 13

*Fed. R. Civ. P.* 23 (a)(3) ........................................................................................ 14

*Fed. R. Civ. P.* 23 (c)(2)(B) .................................................................................. 11

*Fed. R. Civ. P.* 23(a) ...................................................................................... 11, 13

*Fed. R. Civ. P.* 23(b)(3) ........................................................................................ 12

*Fed. R. Civ. P.* 23(e) .............................................................................................. 11

*Fed. R. Civ. P.* 23(e)(2) ......................................................................................... 21

*Fed. R. Civ. P.* 23(h)(1) ......................................................................................... 29

*Fed. R. Civ. P.* 30(a)(1) ......................................................................................... 36

*Fed. R. Civ. P.* 61 ............................................................................................ 37, 38

## Treatises

2 *Conte & Newberg, Newberg on Class Actions* § 8.32 (2002). ................................... 43

4 Conte & Newberg, Newberg on Class Actions § 11:56 (4th ed. 2002) .................................. 36

*Manual for Complex Litigation*, Fourth, § 21.31 (2004) ............................................. 32

## I.    PRELIMINARY STATEMENT

After litigating this case since December 10, 2009 and successfully negotiating a settlement that creates substantial benefits for a class of hundreds of thousands of Hertz car rental consumers, Plaintiffs, in accordance with the Order Preliminarily Approving the Settlement, now seek an Order that would grant final approval to the Parties' Settlement Agreement (the "Agreement")[Dkt. 98-4] [1]; finally certify a class for settlement purposes; and enter final judgment dismissing the case. As set forth below, all of the judicial and prudential requirements for granting final approval are satisfied and Class Members were provided with ample notice of the settlement. Plaintiffs' motion for entry of a Final Approval Order as provided in the Settlement Agreement accordingly should be granted. Defendants join in the request that this Court grant final approval to the Agreement, finally certify the class for settlement purposes, and enter a final judgment dismissing the case

## II.    HISTORY OF THE LITIGATION

A detailed summary of the litigation history and benefits made available to the Class under the settlement is contained in Plaintiffs' Memorandum of Law in Support of the Joint Motion for Preliminary Approval and supporting materials.[2] These facts are repeated here only insofar as they are relevant to the instant motion.

---

[1]    For consistency, Plaintiffs have capitalized words that the settling Parties defined in the Agreement [Dkt. 98-4].  Plaintiffs incorporate those definitions in this memorandum.

[2]    *See* Dkt. 98-2 ("Preliminary Approval Memo"); Declaration of Steven R. Jaffe in Support of Preliminary Approval of Class Action Settlement ("Jaffe Dec.") [Dkt. 98-3].

## A.  The Parties Pursued their Positions Zealously

The record demonstrates that the Parties pursued their opposing positions zealously and comprehensively. This is a Consolidated Action, resulting from two actions alleging similar claims against Defendants regarding the "PlatePass®" electronic toll payment system ("PlatePass System") they implemented for Hertz rental cars. In first of the two actions—the *Doherty* Action[3]—Defendants filed two motions to dismiss: one in February 2010 [Doherty Action Dkt. 7] and one in April 2010 [Dkt. 17]. Doherty filed briefs in opposition to both motions [Doherty Action Dkt. 14, 18]. In the other action—the *Simonson* Action[4]— Defendants filed a motion to dismiss on June 22, 2010 [Simonson Action Dkt. 11], and Simonson filed a brief in opposition to Defendants' motion to dismiss on July 3, 2010 [Simonson Action Dkt. 12].

In November 2010, the Court denied the dismissal motion in the *Doherty* Action [Dkt. 24], and on March 28, 2011, the Court denied the dismissal motion in the *Simonson* Action [Dkt. 23]. Following denial of these motions, the Court on agreement of the Parties entered an order [Dkt. 40] consolidating the *Simonson* and *Doherty* Actions for all purposes into docket number Civil No. 1: 10-cv-00359-NHL-KMW (the "Consolidated Action"). On July 27, 2011, Plaintiffs filed a consolidated amended complaint ("Complaint") [Dkt. 43] that combined all claims against Defendants regarding Defendants' implementation and operation of the "PlatePass System."[5]  Defendants then filed their answers to the Complaint [Dkt. 46, 47]. On October 22,

---

[3]     Susan Doherty v. The Hertz Corporation, American Traffic Solutions, and PlatePass LLC, Case No. 1:10-CV-00359 ("Doherty Action").

[4]     Dwight Simonson v. The Hertz Corporation, American Traffic Solutions, and PlatePass LLC, Case No. 1:10-CV-01585 ("Simonson Action")

[5]     At this time, Ms. Doherty's counsel turned control of the prosecution over to Mr. Simonson's  counsel,: Cohen Placitella & Roth, PC, Famer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L. and  Emanuel & Dunn, PLLC.

2012, Defendants ATS and PlatePass LLC filed a motion for summary judgment. The Court denied this motion without prejudice in view of the Parties' advice to the Court that this proposed settlement was reached. [Dkt. 74-78].

### B. The Parties Conducted Substantial Factual Investigation Before Settling

Each Party engaged in extensive investigation and discovery to explore and develop its position that in turn led to a thorough review of the strength and weaknesses of each litigant's position prior to reaching a compromise of its position [Jaffe Decl. ¶¶ 12-18, Dkt. 98-3]. From June 2011 through September 2012, the Parties exchanged Rule 26 disclosures; issued bilateral discovery; and took numerous depositions of each other's witnesses. Plaintiffs' disclosures included various documents gathered in pre-suit investigations from numerous publically available sources.[6] Plaintiffs served two sets of requests to produce to each Defendant that resulted in the production of approximately 40,000 pages constituting at least six gigabytes of data that Class Counsel reviewed and analyzed.[7] Indeed, during discovery Hertz produced an entire transactional database for Class Counsel to upload, query, and review.[8] Plaintiffs also served over 200 admission requests and two sets of interrogatories on Defendants whose answers, to the extent deemed deficient, Class Counsel met and conferred about on several occasions.[9] For their part, Defendants met or anticipated each of Plaintiff's requests with their

---

[6]      Jaffe Decl.¶ 13 [Dkt. 98-3].

[7]      Id.

[8]      Id.

[9]      Id.

own by serving multiple rounds of extensive interrogatories and document requests on each Plaintiff.[10]

The settling Parties also conducted several lengthy depositions of each other's principals and managers in various cities and states across the U.S. [Jaffe Decl. ¶¶ 16-18, Dkt. 98-3]: Class Counsel took the deposition of Defendants ATS's and PlatePass LLC's Fed. R. Civ. P. 30(b) (6) designee who was instrumental in developing the PlatePass System in Phoenix, Arizona, on June 21, 2012;[11] the President of ATS in July 2012, in New York, New York;[12] Hertz's corporate representative in Chicago in October 2012;[13] and several other officers of one or more of the Defendants in various states.[14] Defendants in turn deposed each Plaintiff in Philadelphia, Pennsylvania, in August 2012.[15]

### C. The Parties Negotiated this Settlement at Arms-Length

The settling Parties first attempted to mediate this case at daylong session in front of the Hon. Joel Rosen, U.S. Mag. J. (Retired) ("Judge Rosen") in December 2011 [Jaffe Decl. ¶ 19, Dkt. 98-3]. Despite their best efforts, their first attempt at mediation resulted in an impasse.[16] After the mediation session ended unsuccessfully, Judge Rosen suggested, and the Parties

---

[10]     Id. ¶ 14.

[11]     [Dkt. 98-3].  Id. ¶ 16.

[12]     Id.

[13]     Id.

[14]     Id. ¶ 17.

[15]     Id. ¶ 18.

[16]     Id.

agreed, that he stay involved in any further negotiations and that he be updated about the case's status as the litigation proceeded.[17]

Against a backdrop of extensive discovery and hard-fought litigation, interest in settlement re-kindled as the discovery cut-off date drew near. At that time a process of formal and informal settlement negotiations began. Encouraged by Judge Rosen, counsel for the settling parties engaged in an extended dialogue about possible resolution. They met in Chicago, Illinois, in September, 2012;[18] Fort Lauderdale, Florida in November 2012;[19] and again in Ft. Lauderdale in January 2013.[20] Decision makers and counsel for the settling parties then convened in Philadelphia on March 21 and 22, 2013, at which time under the guidance of Judge Rosen, the settling Parties reached agreement on the class relief and then other terms of settlement that comprise the Agreement they now request be approved.[21]

In bears repeating that throughout this process, Class Counsel were adamant that negotiations of any class relief and any attorney's fees be separate and that the class relief be agreed upon completely prior to discussing fees [Jaffe Decl. ¶ 22, Dkt. 98-3]. As a result, counsel for the settling parties focused settlement talks on class relief with negotiations on the relief to Class Members proceeding first and separate from any discussion of attorney's fees or service awards to Plaintiffs. Only after agreement was reached on class relief did discussions over attorney's fees or awards to Plaintiffs start to occur.[22]  Prior to turning to negotiating fees, the

---

[17]     Id. ¶ 23.

[18]     Id. ¶  24.

[19]     Id.

[20]     Id.

[21]     Id. ¶ 25.

[22]     Id. ¶ 22.

Parties in each other's presence presented the terms of the class relief and stated their assent in principle to Judge Rosen.[23]

## II.    SETTLEMENT TERMS

As set forth in the Agreement, Plaintiffs' counsel and counsel for Defendants negotiated a proposed settlement that will provide substantial benefits to the following Class that the Court has preliminarily approved:

> All natural persons in the United States who:  (a) rented a car from Hertz with the first day of the rental between July 1, 2006 and March 31, 2010; (b) used PlatePass during that rental; and (c) paid PlatePass-Related Charges incurred during that rental, but not including those who file a Request for Exclusion, governmental entities, Defendants, their parents, subsidiaries, affiliates, directors, officers, attorneys, and members of their immediate families, and the Court and persons within the third degree of relationship to the Court.[24]

[Dkt. 100 at ¶¶ 1-2].

As previously discussed, the cornerstone of the settlement is the substantial, concrete monetary relief and direct cash benefit it provides to Class Members who make claims under the Agreement. First and foremost, the Settlement Agreement requires Defendants to establish a Common Fund of $11,004,000 for settlement and satisfaction of all class action claims.[25] The settlement and the underlying litigation have also precipitated a change in the Hertz car rental contract, which in combination with cash relief, was essentially what Plaintiffs asked for in their

---

[23]     *Id*.

[24]     Agreement ¶ 1.5 [Dkt. 98-4].

[25]     *Id*. ¶ 2.1.

Consolidated Complaint [Agreement ¶ 2.7, Dkt. 98-4; Dkt. 43 (Consolidated Amended Complaint)].[26]

In addition to the $11,004,000 Common Fund, the settlement confers other benefits including the requirement that Defendants establish and maintain at their sole expense a transparent settlement administration process and establish and fund a Settlement Administrator to administer the settlement. [Agreement ¶¶ 1.28, 5.2, Dkt. 98-4] The estimated cost of the administration and notice mailings and publications is slightly in excess of $1 Million. [*See* Declaration of Jeff Dahl annexed as Ex. A to the Jaffe Supp. Dec., Dkt. 107]. As part of their settlement duties, Defendants have engaged Dahl, Administration, as the Settlement Administrator who is administering the settlement under the Court's Preliminary Approval Order.[27]

In furtherance of that Order, Dahl has also mailed out 1,663,248 post-card Summary Notices[28] and Defendants arranged for Dahl to issue two rounds of nationwide Publication Notice—one appeared in USA Today on August 15, 2013, and the other appeared in that publication on September 18, 2013.[29] Each publication placement cost the Defendants approximately $21,000.[30]

---

[26]    During the first quarter of 2010, Hertz amended its various disclosures about the PlatePass product and service on its rental agreement to provide a more detailed description about PlatePass, its costs to customers, and pricing mechanics.  Those changes were fully rolled out by March 31, 2010.  As Defendants acknowledge in the Agreement, the filing of Plaintiffs' lawsuit led to these changes to Hertz's rental agreement

[27]    See Affidavit of Jeffrey D. Dahl with Respect to Settlement Activities Completed as of September ,30, , 2013 ("**Dahl Affidavit**")(summarizing implementation of the settlement notice and the settlement administration thus far). [Dkt. 114]

[28]    Id. at ¶13.

[29]    Id. at ¶ 20.

[30]    Dkt. 106-1 at ¶ 28

Additional benefits of the settlement include a streamlined process for administering refunds for settlement Class Members [Agreement ¶¶ 2.2-2.5, Dkt. 98-4], which is in progress and will continue after final approval. [*Id.*, Dahl Affidavit ¶22-25] It also establishes a method for resolving any disputes about refunds [*id.* ¶ 2.5]. In addition to the other forms of notice under the settlement, Dahl has set up and maintained a settlement website with on-line Claim Form submission[31] at www.hertzplatepasssettlement.com,[32] and a toll free number for Class Members to call to receive information on the settlement [*id.* ¶ 2.2(i), Dkt. 98-4, Dahl Affidavit ¶22-25].[33] Following commencement of the Court-ordered notice, Dahl has been overseeing the agreed claims process whereby Class Members submit claims through a Claim Form to Settlement Administrator,[34] at www.hertzplatepasssettlement.com electronically or per requested mailed hard copies of the form.[35] Dahl has also set up procedures for resolving disputes about refunds required under the Agreement. [Agreement ¶ 2.5].

As pointed out in Plaintiffs' preliminary approval motion [Dkt. 98-2], the amount of a Class Member's refund under the Agreement depends on payment data from Defendants' records that has been pre-populated on each Class Member's electronic or paper Claim Form.[36]  Where Defendants' PlatePass-transaction databases did not contain sufficient information to enable the Settlement Administrator to pre-populate the Claim Form with specific PlatePass-Related Charges information, in whole or in part, for any given Class Member, the Class Member is

---

[31]     Aggreement ¶¶ 2.2(ii), 2.2(iii), 2.3(i), 3.3 [Dkt. 98-4]; Dahl Affidavit ¶ 23.

[32]     Dahl Affidavit at ¶ 22.

[33]     Id. at ¶¶22-25.

[34]     Agreement ¶ 2.3 [Dkt. 98-4]; Dahl Affidavit at¶¶ 12-14, 22-27. ¶

[35]     Agreement, ¶ 2.2(i); http://hertzplatepasssettlement.com/info/claim.  The Claim Form is also available on the website via downloadable PDF; Dahl Affidavit at ¶ 23.

[36]     Agreement ¶¶ 2.2, 2.2(iii); Dahl Affidavit ¶ 25.

entitled to submit to the Settlement Administrator records or other documentary proof to show past PlatePass use or payment of PlatePass-Related Charges on Hertz rentals during the Class Period.[37] If documentary proof is submitted, the burden will be on Defendants to disprove that Class Member's demand for additional reimbursement.[38]

The Agreement also benefits the Class by allowing Class Counsel confirmatory discovery of data used to calculate cash payments to Class Members and complete, open access to the Settlement Administrator and the settlement administration.[39] Since the Court's issuance of the Preliminary Approval Order on July 1, 2013 [Dkt. 100], Class Counsel has had regular meetings and exchanges with Dahl to ensure the settlement administration, notice, and claims process was being conducted fairly and in accordance with the Agreement.[40] Class Counsel have made several inquiries to Dahl regarding administration issues and they were responded to promptly.[41] Dahl also provided regular updates on the administrative process, which according to Dahl will cost Defendants approximately $1,000,000. Dahl has also gone over and created an analysis of the defendants' databases which Class Counsel has used to confirm the data on which the Settlement was based.[42]

Another significant benefit of the settlement is that cash refunds from the $11,004,000 Common Fund paid to eligible Class Members will be *net* of fees and administration costs. Defendants have agreed to separately pay all costs of the notice and administration as well as

---

[37]    Agreement ¶¶ 2.2, 2.4.2; Dahl Affidavit at Exhibit D.

[38]    Id. ¶ 2.5.2(c).

[39]    Id. ¶ 8.2.

[40]    Dkt 106-1 at ¶ 29; Dahl Affidavit ¶ 32.

[41]    *Id.* Dahl Affidavit ¶32.

[42]    Dkt 106-1 at ¶ 29. Dahl Affidavit at ¶9.

separately pay a reasonable attorney's fees and costs to Class Counsel as approved by the Court up to limits of, respectively, $3,026,100 and $100,000.[43] Defendants have also agreed to separately pay any Class Representative Service award that the Court may in its discretion award Plaintiffs Doherty and Simonson up to $5000 apiece.[44] Any attorney's fees, costs, and service award payments will therefore not be paid from or in any way reduce the $11,004,000 Common Fund or any refund made under the Agreement to any Claimant.[45] Under established precedent, where the defendants agree to pay such fees and costs separately from the common fund or payments to class members as part of the settlement, they are included as part of the total class action recovery for purposes of calculating and reviewing attorney's fee awards.[46]

## III.   ARGUMENT

"There is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *accord In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("the law favors settlement, particularly in class actions and other

---

[43]     Agreement ¶ 5.4 [Dkt. 98-4].

[44]     *Id.* ¶ 5.5.

[45]     Jaffe Dec. ¶ 31 [Dkt. 98-3]. Class Counsel has separately applied for awards of fees and costs in accordance with the Preliminary Approval Order [Dkt. 106].

[46]     *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 802 (3rd Cir. 1995), cert. denied, 516 U.S. 824 (1995); *Pro v. Hertz Equip. Rental Corp.*, 2013 U.S. Dist. LEXIS 86995 (D.N.J. June 30, 2013) (including amount of separately agreed upon attorneys fee  as part of class recovery when calculating and determining fee award in connection with class action settlement); *Lonardo v. Travelers Indemnity  Co.*, 706 F. Supp. 2d 766, 803 (N.D. Ohio 2010) (holding for purposes of calculating the percentage of the fee, agreed upon attorneys' fee award of $ 4.6 million is part of the Total Class Benefit); *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25067 *56 (D.D.C. 2000) (holding attorneys' fees that are borne by defendants and not plaintiffs are a valuable part of the settlement and fairly characterized as part of the common fund.")

complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1986) (noting Third Circuit's policy of "encouraging settlement of complex litigation that otherwise could linger for years"); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("all Federal Circuits recognize the utility of ... 'settlement classes' as a means to facilitate the settlement of complex nationwide class actions").

Moreover, a proposed settlement is entitled to a presumption of fairness where, as here, "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d at535 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir. 2001).

Before granting final approval to a class action settlement the Court should determine whether to certify the class for settlement purposes, and then assess whether the terms of the settlement are fair, reasonable and adequate within the meaning of *Fed. R. Civ. P.* 23(e). *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); *Boone v. City of Phila.*, 668 F.Supp.2d 693, 705 (E.D. Pa. 2009). The Court should also determine whether the class members received adequate notice of the settlement. *Fed. R. Civ. P.* 23 (c)(2)(B). As set forth below, each of these requirements has been satisfied here.

### A.     The Settlement Class Should Be Certified

Rule 23 requires this Court to engage in a two-step analysis to determine whether it should certify a class action for settlement purposes. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). First, the Court must determine whether Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in *Fed. R. Civ. P.* 23(a). *Warfarin Sodium*, 391 F.3d at 527; *see also Amchem Products, Inc.,* v.

*Windsor*, 521 U.S. 591, 613 (1997). Second, the Court must find that the class fits within one of the three categories of class actions set forth in Rule 23(b). *Cmty. Bank*, 418 F.3d at 302. In the present case, Plaintiffs seek certification under Rule 23(b)(3), "the customary vehicle for damage actions." *Id.* Rule 23(b)(3) requires that common questions "predominate over any questions affecting only individual members" and that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615.

In undertaking the Rule 23 analysis, the district court may take the proposed settlement into consideration. *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 308 (3d Cir. 1998); *Cmty. Bank*, 418 F.3d at 300. In this respect, as noted above, there is one material difference between the certification of litigation classes and settlement classes:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.

*Amchem*, 521 U.S. at 620; *Cmty. Bank*, 418 F.3d at 309. "The difference is key." *Warfarin Sodium*, 391 F.3d at 529. As the Third Circuit explains:

> In certification of litigation classes for claims arising under the laws of the fifty states, [the Third Circuit has] noted that the district court must determine whether variations in state laws present the types of insuperable obstacles which render class action litigation unmanageable…However, when dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class.

*Id.*

As discussed below, all the Rule 23 requirements for a settlement class are satisfied.

## 1. The Requirements Of Rule 23(A)(1)-(4) Are Met

### (a) Numerosity Exists

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." *Fed. R. Civ. P.* 23 (a). "Impracticability" under this rule refers to the degree of difficulty or inconvenience involved in joining all members of the proposed class in accordance with Rule 19. *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 543 (D.N.J. 1999) (citation omitted). "The plaintiff need not precisely enumerate the potential size of the proposed class, nor is the plaintiff required to demonstrate that joinder would be impossible." *Id.* (citation omitted). "In determining whether the numerosity requirement is satisfied, the court should consider the estimated number of parties in the proposed class, the expediency of joinder, and the practicality of multiple lawsuits." *Id.* (citation omitted).

According to Defendants' records, approximately 1.8 million Hertz renters incurred PlatePass-Related Charges during the Class Period.[47]   Numerosity is easily met here.

### (b)      Commonality Exists

The second prerequisite to class certification is that "there are questions of law *or* fact common to the class." *Fed. R. Civ. P.* 23 (a)(2) (emphasis added). "The commonality requirement will be satisfied if the named plaintiffs share *at least one* question of fact or law with the grievances of the prospective class." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001) (citation omitted) (emphasis in original) (citing *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994). Class members do not have to share identical claims or claims arising from the same operative facts. *See In re Prudential Ins.*, 148 F.3d at 310; *Baby Neal*, 43 F.3d at 57 (1994) (Factual differences in the claims of class members do not defeat certification). "Because the

---

[47]      Jaffe Decl. ¶ 26 [Dkt. 98-3].]; Dahl Affidavit ¶8.

requirement may be satisfied by a single common issue, it is easily met." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 70 (D.N.J. 2009).

Plaintiffs and Class Members share several common factual and legal issues that satisfy the commonality requirement. Each Class Member is an individual who: (1) rented from Hertz during a given time period; (2) paid PlatePass-Related charges; (3) where and when the charges were allegedly not properly disclosed or contractually allowed; and (4) has never received a refund. The underlying legal question for each Plaintiff and Class Member centers on whether or not the Hertz rental contract permits the means and manner that Defendants employed to implement the PlatePass program. If not, Defendants allegedly breached the contract, violated the New Jersey Consumer Fraud Act, wrongly converted Class Members' monies, were unjustly enriched, and/or committed civil conspiracy. As a result, there is at least one common factual or legal question readily apparent in this case and commonality under Rule 23 is easily satisfied.

### (c) Typicality Exists

The third prerequisite for class certification is "typicality" set forth in Rule 23(a)(3), which provides that a class action can be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Fed. R. Civ. P.* 23 (a)(3). "The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal*, 43 F.3d at 57. "The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Id.* "Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are

based differs from that upon which the claims of other class members will perforce be based.' " *Id.* at 57-58 (quoting *Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir. 1988)). "Commentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Id*. at 58. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id.* (quoting *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir. 1992)).

In this case, each Plaintiff, like each Class Member, was allegedly subjected to the same course of conduct that gave rise to each Plaintiff's and each Class Member's claim. Each rented from Hertz under Hertz's form rental contract. Plaintiffs allege that they were each charged and paid the subject administrative fees and toll differentials, as were and did class members. Each Plaintiff and each Class Member claims that the Hertz's rental contract did not allow Defendants to implement the PlatePass program as they did, and therefore Defendants were liable for damages and injunctive relief based on legal claims having identical elements and standards of proof. Plaintiffs' interests are therefore aligned with those of each Class Member, and consequently, the claims of the Plaintiffs are typical of the claims of other Class Members and the typicality prong of Rule 23 set forth in subpart (a)(3) is met.

        **(d)**        **Adequacy of Representation Exists**

The fourth and final prerequisite under Rule 23(a) is the "adequacy of representation" requirement contained in Rule 23 (a)(4). "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *New*

15

*Directions Treatment Servs. v. City of Reading,* 490 F.3d 293, 313 (3d Cir. 2007) (quoting *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975)).

No actual or potential conflicts exist between Plaintiffs and the Class Members in this case. As stated above, Plaintiffs are challenging the same alleged unlawful conduct and seeking monetary and injunctive relief for the benefit of all Class Members. The right to relief of Plaintiffs, like that of the absent Class Members, depends upon demonstrating the same pattern of allegedly unlawful conduct. Furthermore, according to their declarations filed with this memorandum,[48] Plaintiffs actively participated in the retention of counsel, monitored and assisted in the litigation, expressed the intention to vigorously prosecute the case on behalf of the Class, and participated in discovery by producing documents and information.

Plaintiffs' adequacy is bolstered by their choice of qualified counsel. Plaintiffs have retained counsel not only well versed in complex class litigation, but also highly experienced in consumer litigations. For nearly three decades, Plaintiffs' counsel have successfully investigated, commenced and prosecuted class and consumer cases in state and federal courts around the country, including here in New Jersey.[49] In light of this experience and Plaintiffs' qualifications, Plaintiffs and their counsel are sufficiently qualified and adequate to represent the Class for Rule 23(a)(4) purposes.

### 2. The Requirements of Rule 23(b)(3), Fed. R. Civ. P. are met

In addition to meeting the requirements of Rule 23(a), the movant must show that the case can proceed as a class action under subparts (1), (2), and/or (3) of Rule 23(b). *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 72. The settlement entails certification

---

[48]    See Declarations of Dwight Simonson and Susan Doherty [Dkt. 98-6] attached to Jaffe Dec., Exhibits E and F, respectively.

[49]    Jaffe Decl., Exhibits B-D thereto [Dkt. 98-3].

16

under Rule 23(b)(3).[50]   Under Rule 23(b)(3), a movant must show two elements: (1) that common questions predominate over individual questions; and (2) that a class action is a superior procedural vehicle rather than separate individual cases. *Id.*  Both elements are met here.

### (a)        Common Questions Predominate

This action satisfies the requirement of Rule 23(b)(3) that common questions of fact and law predominate over individualized ones. As the Supreme Court explained in *Amchem*, "predominance is a test readily met in certain cases alleging consumer fraud…" 521 U.S. at 625. "This is even more true in a settlement-only class action, where the court certifying the class need not examine issues of manageability." *Cmty. Bank*, 418 F.3d at 306. The Third Circuit recently reaffirmed the principles that inform the predominance analysis when considering certification of a settlement class:

> From our case law, we can distill at least three guideposts that direct the predominance inquiry: first, that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members; second, that variations in state law do not necessarily defeat predominance; and third, that concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class.

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). Because Plaintiffs seek certification of a settlement-only class, the existence of any individual inquiry does not preclude class action treatment where all class members face the necessity of proving the same fraudulent scheme. *Cmty. Bank*, 418 F.3d. at 307; *see also Prudential*, 148 F.3d at 315 ("presence of individual questions as to the reliance of each [plaintiff] does not mean that the common questions of law and fact do not predominate"). Moreover here, the answers to common

---

[50]        Agreement ¶ 4.1 [Dkt. 98-4].

questions will advance the common resolution of the class claims. *Wal-Mart v. Dukes*, 131 S.Ct. 2541, 2551 (2011)

Plaintiffs' claims stem from a form contract (the Hertz rental contract) that contains standardized terms and governed each Class Member's rental from Hertz. Plaintiffs alleged that during the Class Period the terms of the rental contract did not clearly and properly constitute an agreement to pay PlatePass-Related Charges. The term at issue did not vary significantly over the Class Period and was contained in each standardized version of each Class Member's contract. The predominant liability question at the core of every Class Member's claim is whether or not Hertz's rental contract properly authorized Defendants to charge and collect administrative fees for the PlatePass program. A determination of this core legal question for or against each Class Member would either materially advance his or her claim or entirely negate it. If the rental contract did not allow Defendants' to charge and implement the PlatePass program, a breach of contract or unjust enrichment or other violation could be shown, and each Class Member would be allegedly equally entitled to relief. Defendants' claimed post-contract disclosures would not absolve Defendants of liability for unfair or unconscionable acts under the New Jersey Consumer Fraud Act and under additional common-law theories given that the authorization for charging PlatePass Service Fees was necessarily based on the Hertz rental agreement that governed the entire rental relationship with Class Members. The rental contract was therefore central to each legal theory in the case. Common questions about the Hertz rental contract predominated among all Class Members. Predominance is thus satisfied.

       **(b)**        **Class Treatment of Plaintiffs' Claims is Superior**

To demonstrate that a class action is "superior to other available methods" for bringing suit in a given case, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'" *In re Ins.*

18

*Brokerage Antitrust Litig.*, 282 F.R.D. 92, 108-09 (D.N.J. 2012). In analyzing superiority, courts review the costs to class members to bring the claims alleged. *Id.* (citations omitted) "The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation…" *Sullivan*, 667 F.3d at 312 (3d Cir. 2011) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. at 617. Courts also consider judicial economy and the risk of duplicate or conflicting court proceedings or rulings. *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at109 (citations omitted).

In *Warfarin Sodium*, the Third Circuit held that the superiority requirement was satisfied in light of the "potentially large number of class members…" 391 F.3d at 534. Individual consumer class members had little interest in "individually controlling the prosecution or defense of separate actions," because each consumer had a very small claim in relation to the cost of prosecuting a lawsuit. *Id.* Thus, from the consumers' standpoint, a class action facilitated spreading of the litigation costs among the numerous injured parties and encouraged the private enforcement of the statutes. *Id.* The relatively small number of individual lawsuits pending against the defendant indicated that there was a lack of interest in individual prosecution of claims. *Id.* The Third Circuit acknowledged the district court's finding that "it was desirable to concentrate litigation in Delaware, where [the defendant] had its principal place of business and where several initial class action lawsuits had been filed." *Id.*

This case presents a quintessential example of case demonstrating the superiority of class treatment of a plaintiff's claim. Hertz is based in New Jersey and the other Defendants do substantial business here. The *Doherty* and *Simonson* actions were filed here. Over the Class Period, estimates of the total individual damages for each individual Class Member averaged $9-

$10 per Class Member.[51] Given the small amount of individual damages, individual claims and lawsuits on these facts would be highly unlikely and would not warrant an individual's time or those of her counsel. Absent class treatment, Class Members would never have their day in court because individual suits would be cost-prohibitive given the relatively small amounts at stake. As the Supreme Court explained in *Amchem*:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

521 U.S. at 617. (citation omitted). Furthermore, thousands of suits based on PlatePass-Related Charges would constitute "needless duplication of effort" by all litigants and the Court, and would raise the very real "possibility of conflicting outcomes." *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 109 (citations omitted).  It would make no sense for court after court to construe the same rental contract provisions and it "would be neither efficient nor fair to anyone, including the defendant… to force multiple trials to hear the same [liability] evidence." *Fournigault v. Independence One Mortg. Corp.*, 234 F.R.D. 641 (N.D. Ill. 2006) (quotation omitted). The balance of the foregoing weighs heavily in favor of the class treatment here, and resolving these claims in this one action through a settlement class simply makes good sense. The litigation of all claims of the 1.6 million Class Members who individually have suffered very modest damages in this one action is far more desirable than numerous, separate actions; therefore the superiority requirement is met. *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 109.

---

[51]     Jaffe Decl. ¶ 26 [Dkt. 98-3].

In sum, this case meets all the requirements for the final certification of a settlement class under Rule 23(a) and (b)(3). The class may and should be finally certified for settlement purposes.

### B.    The Settlement is Fair, Reasonable, and Adequate

Before a settlement of a class action can be finally approved, the Court must determine "after a hearing" that it is "fair, adequate, and reasonable." *See Fed. R. Civ. P.* 23(e)(2); *Pro v. Hertz Equip. Rental Corp.,* 2013 U.S. Dist. LEXIS 86995 (D.N.J. June 20, 2013)(citing *Girsh,* 521 F.2d at 157); *accord Prudential,* 148 F.3d 316. The Third Circuit "has adopted a nine-factor test to help district courts structure their final decisions to approve settlements as fair, reasonable, and adequate as required by Rule 23." *In re General Motors*, 55 F.3d at 785 (citing *Girsh,* 521 F.2d at 157). These factors, coined by courts as the "*Girsh* factors," include "(1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation." *Id.*

"The *Girsh* factors [however] do not provide an exhaustive list of factors to be considered when reviewing a proposed settlement." *In re AT & T Corp.,* 455 F.3d 160, 165 (3d Cir. 2006). Other factors (so called "prudential" factors) this Court may consider include:

> [T]he maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for

other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.*(Citation omitted). Whatever the context, "[t]hese [foregoing] factors are a guide and the absence of one or more does not automatically render the settlement unfair." *Pro*, 2013 U.S. Dist. LEXIS 86995; *In re Merck & Co. Vytorin ERISA Litig.*, 2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010)(citation omitted). "Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*." *Id.* (citations omitted). Applying this analysis to the Settlement before the Court, it is clear that the settlement is eminently fair, reasonable and adequate and should be approved.

### 1.  The Stage of the Proceedings and Discovery Favor Approval

This factor seeks to assess whether or not the parties have a sufficient understanding of the merits of the case prior to reaching a settlement. *In re LG/Zenith Rear Projection TV Class Action Litig.*, 2009 U.S. Dist. LEXIS 13568 (D.N.J. Feb. 18, 2009) (citing *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 238 (D.N.J. 2005)). Through this lens courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant*, 264 F.3d at 235. Unsurprisingly, "post-discovery settlements are more likely to reflect the true value of the claim and be fair." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993).

This clearly was not a file and settle case. As stated above, it was thoroughly investigated before and after its inception in 2009 and extensively litigated once in suit. The Settlement Agreement, executed in May 29, 2013, was reached as a result of extensive, arm's-length negotiations between experienced counsel which culminated after several days of mediation sessions involving Judge Rosen. By then, substantial fact discovery had already occurred.

Plaintiffs' counsel had received approximately 40,000 pages constituting at least 6 GB of data and an entire transactional database. Defendants also served multiple rounds of discovery that Plaintiffs responded to, and each deposed several witnesses at various locations around the country. Since the settlement Agreement was reached through arm's-length negotiation between counsel highly experienced in consumer litigation, and "this negotiation process follows meaningful discovery, the maturity and correctness of the settlement becomes all the more apparent." *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 400 (D.N.J. 2006).

In short, at the time of entering into the settlement Agreement, Class Counsel had the benefit of substantial discovery and, thus, fully appreciated the strengths and weaknesses of their case in order to reach a fair bargain. *See In re Mercedes-Benz Tele Aid Contract Litig.*, 2011 U.S. Dist. LEXIS 101995 (D.N.J. Sept. 9, 2011). The same is true for counsel for Defendants. Accordingly, this *Girsh* factor favors approval of the settlement.

## 2. The Complexity and Likely Duration of the Litigation Favor Approval

In reviewing this factor courts assess whether the settlement avoids the continuation of lengthy, complex, and expensive litigation. *In re Cendant Corp. Litig.*, 264 F.3d at 233. Under this analysis, courts consider the vagaries of litigation and "compare the significance of immediate recovery by way of compromise" to "the mere possibility of relief in the future, after protracted and expensive litigation." *Careccio v. BMW of N. Am. LLC*, 2010 U.S. Dist. LEXIS 42063 (D.N.J. Apr. 29, 2010)(citing *Bullock v. Administrator of Kircher's Estate,* 84 F.R.D. 1, 10-11 (D.N.J. 1979)). "It has been held proper 'to take the bird in hand instead of a prospective flock in the bush.'" *Bullock*, 84 F.R.D. at 11 (citation omitted).

Here, able defense counsel[52] has vigorously litigated the case since August 2009, and, absent a settlement, Defendants would likely vigorously oppose class certification and seek appeal of any unfavorable ruling on class certification under Fed. R. Civ. P. 23(f), further delaying any chance of recovery. Two Defendants have already moved for summary judgment on the merits. By reaching this settlement, the Parties will avoid further protracted litigation with, instead, an on-line means for prompt, streamlined resolution of settlement Class Members' claims against Defendants with relaxed burdens of proof, and a presumption in favor of the Class Member in cases where there is an evidentiary dispute over the amount of fees paid. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, the potential evidentiary and legal issues, and the possibility of further appellate review, the availability of prompt relief under the settlement is highly beneficial to settlement Class Members. *See Prudential*, 148 F.3d at 317 (noting how "settlement provide[s] class members the opportunity to file claims immediately after court approval of the settlement, rather than waiting through what no doubt would be protracted litigation.").

Each of these issues has consumed - and if the settlement were not approved and this case were to continue would undoubtedly continue to consume - huge quantities of time, money, and judicial resources. Indeed, if the case were to continue any of the Court's decisions on these issues would likely be appealed. Accordingly, even if Plaintiffs were ultimately to prevail in this action (which Defendants vigorously contest), that success would bear fruit for the Settlement Class only after years of trial and appellate proceedings and the expenditure of millions of dollars in both legal fees and expenses by both sides. By contrast, the Settlement Agreement

---

[52]      Defendants' counsel in this case were attorneys from highly respected, well-heeled national law firms: Jenner & Block LLP and Burns & Levinson LLP.

provides the Settlement Class with certainty of result and specific, readily attainable benefits payable now. By settling this action, the parties have shortened what would have been a very hard-fought and exhausting period of time, which may have realistically ended with a decision similar to the terms of this settlement or potentially denied any relief and achieved no benefit for Settlement Class Members. Thus, this *Girsh* factor involving complexity and duration favors settlement.

### 3. The Risks of Establishing Class Certification, Liability and Damages Favor Approval

In reviewing these *Girsh* factors courts "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 644 (D.N.J. 2004). "In doing so, however, a court should not conduct a 'mini-trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel[.]'" *Id.* at 644-45. "[T]he risks surrounding a trial on the merits are always considerable," and this case is no exception. *Weiss v. Mercedes-Benz of N. Am.,* 899 F. Supp. 1297, 1301 (D.N.J. 1995).

While Plaintiffs and Class Counsel are confident in the merits of their case, they also recognize the uncertainties of litigation. The claims advanced on behalf of the settlement Class involve numerous complex and risky legal and technical issues regarding damages, liability, and class certification, and would have likely required, *inter alia*, expert testimony at trial, especially regarding the toll differential allegations. The PlatePass program unfolded over a series of months across the country and involved contracts with toll authorities having differing terms and

25

procedures.[53] Nationwide class actions are exceedingly difficult to maintain. Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable. *In re General Motors,* 55 F.3d at 815. In this case, as in other class actions, there is a risk that the case might eventually be decertified. This risk is particularly acute where, as here, choice of law principles may require the application of the state law of each Plaintiff's or each Class Member's home state. There was a real risk here that one-state's law may not apply to all Class Members and class certification would devolve into subclasses over a multitude of states or be completely unmanageable.[54]

In contrast, differences in state law that often complicate the certification of a nationwide litigation class, *see, e.g., In re LifeUSA Holding Inc.*, 242 F.3d 136, 147 n.11 (3d Cir. 2001), are "irrelevant to certification of a settlement class." *Warfarin Sodium*, 391 F.3d at 529. Moreover, because the case involved non-disclosures of material facts relating to PlatePass fees and charges nationwide, this Action posed the significant risk that Defendants may prevail at class certification and on liability by contending that PlatePass-related fees were adequately disclosed in signage depending on the time and rental location, and/or that knowledge of the charges could be imputed to some degree to renters around the country who used and paid for the service more than once.[55] Defendants also contended the claims were barred or defeated by the voluntary payment doctrine [Dkt. 7-1].

Thus, the risks and delays inherent in taking the case to trial, viewed against the certainty of the benefits of the settlement, weigh in favor of final approval.

---

[53]    Dkt. 106-1 at ¶ 59.

[54]    *Id.*

[55]    *Id.*

### 4. The Reaction of the Class to the Settlement Favors Approval

This *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Prudential,* 148 F.3d at 318, and the Class's support "creates a strong presumption ... in favor of the Settlement." *Cendant*, 264 F.3d at 235. As this Court has observed, a "small number of objections by Class Members to the Settlement weighs in favor of approval." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 103 (citations omitted). The Third Circuit has found that "[t]he vast disparity between the number of potential Class Members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement." *Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291, *23 (D.N.J. Mar. 22, 2013)(citation omitted). In order to properly evaluate it, "the number and vociferousness of the objectors" must be examined. *In re General Motors*, 55 F.3d at 812. Generally, "silence constitutes tacit consent to the agreement." *Id*. (quotation omitted).

In compliance with the Court's Preliminary Approval Order [Dkt. 100 at ¶¶ 5-6], the Settlement Administrator, Dahl, mailed the Summary Notice to 1,663,248 Class Members nationwide on July 24, 2013.[56]  Notice was later published in USA Today and a settlement website was established containing the details of the settlement terms.[57]  The deadline by which Class Members could object to or exclude themselves from the settlement was September 24, 2013 [Dkt. 100 at ¶¶ 7-9].[58]  Here, only two Class Members filed objections, and only 48 opted out. When compared to the more than 1.6 million Class Members post-card were mailed out to, the objections represent an extremely minute portion (approximately 0.00012%) of the Class,

---

[56]     *See* http://hertzplatepasssettlement.com/info/dates; Dahl Affidavit at ¶13.

[57]     *See, infra,*Dahl Affidavit at ¶19-23

[58]     Class Members still have until November 21, 2013, to submit Claim Forms.

and the 48 opt-out timely filed exclusions received represent approximately 0.003%. These remarkably low percentages strongly militate toward approving the settlement and demonstrate an extremely positive reaction Class thereto.[59]

Aside from constituting a "miniscule fraction" of the settlement Class, the substance of the two objections received posses no basis to withhold final approval of the settlement. *See In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at *25 (D.N.J. May 14, 2012). The two objections to this settlement are conclusory statements, with no particular attention paid to the actual terms of the settlement, the history of the case, or the details of the work undertaken by Plaintiffs or their counsel. We address the two timely objections *in seriatim*:

### Objector Judd Clayton

The objection letter from Judd Clayton [Dkt. 113] broadly criticizes the "overall unfairness of this settlement;" maintains generally that the proponents of the settlement "have not met their burden" to show that the settlement is fair, reasonable, and adequate; asserts generally that the settlement Class should not be certified; states generally that objection procedures were "unduly burdensome;" and maintains generally that the service awards and fees

---

[59]   Dahl Affidavit at ¶33. "This small number of objections to the settlement itself may be indicative of endorsement." *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 388 (D.N.J. 2012)(citing *In re Prudential*, 148 F.3d at 318; *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (10% objection rate indicates class favors settlement); *Bell Atl. Corp.,* 2 F.3d at 1313-14; *Weiss*, 899 F. Supp. at 1301 (a small percentage of objections allows an inference that a majority silently consents); *Varacallo*, 226 F.R.D. at 237-38). Moreover, as set forth herein, none of the objections support a finding that the settlement is not fair or reasonable. *Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 16704 , at *12 (S.D. Ohio Feb. 21, 2008) (stating that the "existence of objections does not mean that the settlement is unfair . . . [and] it is clear under the applicable law that even majority opposition to a settlement cannot serve as an automatic bar to a settlement" that a court finds to be fair).

requested are "excessive"[Dkt. 113 at 1-2]. He offers though no reasons, citations, or evidence to back up these assertions. He likewise offers absolutely no evidentiary or empirical support for his view that the procedures for objecting were intended by any party to drive down the number of objections. [Dkt. 113 at 2] *See In re AT & T Mobility Wireless Data Services Sales Tax Litig.*, 789 F. Supp. 2d 935, 970 (N.D. Ill. 2011)(rejecting objector's contention that objection procedures deterred objections because no evidence was presented in support). "It is well-established that such generalized [unsupported] objections should be overruled." *McLennan v. LG Elecs. USA, Inc.*, 2012 U.S. Dist. LEXIS 27366, at *20 (D.N.J. Feb. 29, 2012). Standing in contrast to Mr. Clayton's unsubstantiated and unsupported assertions, the specific citations to the record and evidence, the history of this litigation, the affidavits and the arguments that the Parties present in support of the settlement are all amply grounded and supported by fact and case law, and firmly, indeed overwhelmingly, support the reasonableness of the settlement, including the procedures outlined in the notice for objecting. Mr. Clayton's generalized, unsupported assertions fail.

Mr. Clayton takes issue with the attorneys fee award and service fees requested. As to the former he contends that attorney's fee percentage sought is "excessive" because it is being taken from the $11 million Common Fund (when in fact it is not), is too much generally, and that Class Members were not afforded ample opportunity to contest Class Counsels' fee application, which was filed and published on the Settlement Website on September 10, 2013, substantially prior to the objection deadline. Mr. Clayton's first and second assertions are just flat-out wrong[60] and his third one is essentially a challenge to the reasonableness of the notice of Class Counsels' fee. *See Cassese v. Williams*, 503 Fed. Appx. 55, 57 (2d Cir. N.Y. 2012)(citing *Fed. R. Civ. P.* 23(h)(1)'s

---

[60]       Agreement, ¶ 5.4.1 [Dkt. 98-4 at 28].

requirement that fee notice be "directed to class members in a reasonable manner" and categorizing objection based on timing of fee petition and time to object thereto as a reasonable notice issue).

The fact is that the common benefit conferred on the Class in this matter comprises over $15 Million dollars when, as required, the Settlement Agreement's agreed upon attorney's fees (paid in addition to the Common Fund) and cost of administration (paid in addition to the Common Fund) are added to the settlement's $11 Million Common Fund established in the Agreement. The percentage of the attorney's fees requested, as set forth in Class Counsel's pending fee petition is approximately 20% of the common conferred on the Class by this settlement. Such amount is actually at the low end of the range of attorney fee awards for litigation of this type and magnitude. *See e.g., In re Ins. Brokerage Antitrust Litig.*, 2013 U.S. Dist. LEXIS 108042 *108 (D.N.J. Aug 1, 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery"); *Martin v. Foster Wheeler Energy Corp.*, 2008 WL 906472 at *1, *5 (M.D. Pa. Mar. 31, 2008) ("District Courts within the Third Circuit have typically awarded attorney's fees of 30% to 35% of the recovery, plus expenses, in settlements of this size.") (collecting cases).

With respect to the Class Representatives' request for $5,000 service fee awards, for the reasons set forth in the fee petition such award is eminently fair and justified and commensurate with other awards for similar service. It will not in any way reduce the amount of refund any Class Member receives under the settlement.

With respect to the third issue raised by Mr. Clayton, Rule 23(h) (1) governs notice of attorney fees in class actions. It provides that "a claim for an [attorney's fee] award must be made by motion…at a time the court sets." *See In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008

U.S. Dist. LEXIS 124269, at *98 (D.N.J. Dec. 8, 2008).[61]   Nothing in the text of this rule

indicates that a motion must precede the deadline to object or opt-out. *Id.*;[62] or that it must be

served on class members.[63]  Accordingly, in its Preliminary Approval Order, the Court required

that Class Counsels' fee and cost award request be filed on or before September 9, 2013 [Dkt.

100 at ¶ 17], which it was. It was then posted on the settlement website on September 10, 2013.[64]

In that same order, the Court ordered that any objections or opt-outs be filed by September 24,

2013 [Dkt. 100 at ¶¶ 7-11], well after the fee application was on file. This timeframe exceeds

what Rule 23(h) requires and is ample notice and opportunity to challenge the fee application

before the objection deadline.[65]

---

[61]      "The plain meaning of quoted language of Rule 23(h) does not require the moving attorney disseminate the entire text of the memoranda and declarations supporting the motion for fees, only that notice of the motion be given."  *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 124269, at * 98-99.

[62]      *See Bower v. MetLife, Inc.*, 2012 U.S. Dist. LEXIS 149117, at *14 (S.D. Ohio Oct. 17, 2012)(determining Rule 23(h) "does not by its plain language require that the fee petition be submitted at any specific time"); *but see Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.,* 618 F.3d 988, 994-95 (9th Cir. 2010)(finding fee petition should precede objection deadline).

[63]      *See Stair v. Thomas & Cook*, 254 F.R.D. 191, 203 (D.N.J. 2008).

[64]      Dahl Affidavit ¶24.

[65]      *See, e.g., In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 124269, at *87 (fee motion filed seven days before fairness hearing provided ample time for objector to contest motion); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 969 (N.D. Ill. 2011)(accepting February 2, 2011 objection deadline after January 26, 2011 fee application deadline and rejecting objection to timing of fee application as improper)*; Silverman v. Motorola, Inc.*, 2012 U.S. Dist. LEXIS 63477, at *8-9 (N.D. Ill. May 7, 2012)(finding fee application filed two weeks before the objection deadline to constitute "adequate opportunity to object to the motion itself"); *Batmanghelich v. Sirius XM Radio, Inc.*, 2011 U.S. Dist. LEXIS 155710, at *5 (C.D. Cal. Sept. 13, 2011) (finding plaintiff's fee application and class representative service award filed with the court and made available for Class Members to review on the settlement website two weeks prior to the deadline for Class Members to file objections to the settlement gave class members adequate time to review the application and object to the attorneys' fees, costs and/or service payment); *see also*, Rubensten,

Moreover, notice of the fee request was properly included in the materials providing notice of the settlement. *See Stair v. Thomas & Cook*, 254 F.R.D. 191, 203 (D.N.J. 2008)(indicating Rule 23(h) should be included in Rule 23(b)(3) notice required under Rule 23(c)(2)); *Manual for Complex Litigation*, Fourth, § 21.31, p. 285 (2004) (stating "[a] judge who simultaneously certifies a class action and preliminarily approves a class-wide settlement…typically combines notice of certification with notice of settlement and ordinarily includes notice of an application for an award of attorney fees."). In this regard, the materials provided to government entities, the long-form Notice, the Publication Notice, the FAQs, the Agreement, the settlement website, the Preliminary Approval Order, were all made available to Class Members and the public at large weeks or months ago and either refer Class Members to materials that specify the amount of fees and services awards or themselves discuss in detail Class Counsel's agreed-upon fees and the service awards and that they will be determined at a fairness hearing.[66]  The notice plan approved by the Court thus provided sufficient notice of Class Counsels' fee request affording Class Members ample time to object. *See In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 124269 (D.N.J. Dec. 8, 2008)(finding reference to amount of fee and reference to its consideration at fairness hearing sufficient notice); *Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 18838 (S.D. Ohio, February 28, 2008)(finding the court found that counsel satisfied Rule 23(h)'s notice requirements by stating in the class notice the amount of fees they intended to ask the Court to approve).

---

William B., *Class Action Fee Procedures*, 5 Class Action Attorney Fee Digest 3, 5 (January 2011)("It seems reasonable to conclude that *a two-week period* is sufficient, given that this is the time period for motion opposition briefs and given that objectors will likely have had some longer period following the notice dissemination and prior to the fee petition filing to review the whole record in the case.")(emphasis in original).

[66]      Dahl Affidavit ¶23.

Here, the Parties and the Court ensured that all Class Members received reasonable notice in advance of the objection deadline of the amount of attorneys' fees and service awards that Class Counsel intended to seek. Notice of the settlement and the amount of attorney's fees and service award that Class Counsel would seek began being given and published in July, 2013.[67] Clayton filed his own objection based on this notice, and under Rule 23(h) he has had ample time and notice to file a response to the fee motion, prepare his arguments for and appear at the Final Approval Hearing scheduled for October 15, 2013, if he so desired. That Mr. Clayton has chosen not to do so is his prerogative but it is no indication that notice of Class Counsels' fee request was in any way lacking. Mr. Clayton's objections should therefore be overruled.

*Objector Kevin B. Love*

The other objector, Kevin B. Love, an attorney, fares no better than objector Clayton. He filed an objection on August 1, 2013 [Dkt. 101] and a supplement on September 23, 2013 [Dkt. 112]. His objections in summary are that: the notice or the objection process was deficient because required objectors to make themselves available for deposition;[68] that requiring objectors to list prior objections in other class actions was improper;[69] that setting the objection deadline prior the final approval motion was improper, and  that the downloadable version of the Claim Form appearing on the settlement website contained an incorrect date for the claim filing

---

[67]     Dahl Affidavit ¶13, 18, 20, 22 et seq.

[68]     Dkt. 101 at 2-3; Dkt. 112; *see* Preliminary Approval Order [Dkt 100 ¶ 9]; Dahl Affidavit at Exhibit E. (attaching Notice).

[69]     Dkt. 101 at 3-4.

deadline, September 24, 2013 instead of November 21, 2013.[70]  Each of these objections should be overruled.

Mr. Love's attempt to extend the ruling of *Mercury Interactive Corp.*, 618 F.3d at 995 (requiring that attorney's fee motions precede objection deadlines), to final approval motions fails for several reasons [Dkt. 101 at 5]. *First*, the language of Rule 23(h) relied on by the Ninth Circuit does not apply to final approval papers, which are governed under Rule 23(e). Rule 23(e), which addresses the settlement, dismissal or compromise of claims, does not require "motions" to be served on class members with the chance to object.

*Second*, Mr. Love's argument is illogical because one of the issues that a class action plaintiff must address in a motion for final approval of a class settlement is the reaction of the class members to the settlement. *See Girsh*, 521 F.2d at 157. It is therefore essential that the Parties and the Court have an opportunity to analyze and respond to any objections that have been received. Requiring Plaintiffs or any settling party to file a motion for final approval before that information is available stands that process on its head.

In most other respects, the final approval papers (in class action settlements, including this one) contain only legal argument—applying the facts that are already in the record regarding the stage of the litigation and the risks and rewards of the case, against the terms of the settlement itself. Class Members are already in possession of the relevant facts—the terms of the settlement agreement and the claims in the action. Requiring the objection deadline to fall after the motion for final approval accomplishes nothing, other than depriving Class Counsel and

---

[70]     Dkt. 101 at 4.

Parties of the opportunity to respond to any objections at the same time as filing the final approval papers (an efficient process).

*Third*, in practical terms, Mr. Love's objection is also without support based on procedure here. Any objector has the opportunity to respond to the motion for final approval by filing an opposition. Here, the motion for final approval is being filed on October 4, 2013, and noticed for hearing on October 15, 2013, as set forth in the Preliminary Approval Order. If any objector, including Mr. Love, wishes to comment on the final approval papers, he can file an opposition or, as not uncommon, appear at the hearing and address the comments to the Court.

Also, like Mr. Clayton, Mr. Love offers no evidence for the contention that the procedures regarding objections approved by the Court were in any way intended to thwart or deter objections [*See* Dkt. 101 at 2-3; Dkt. 112 at 2]. Mr. Clayton and he are the only Class Members of the more than 1.6 million to raise any objections at all; and specifically to the procedures for objecting outlined the Court's Preliminary Approval Order and in the long-form Notice. There is no evidence in the record that the requirement that objectors make themselves available for deposition stated in the court's Preliminary Approval Order [Dkt. 100 at ¶ 9] and in the long-form Notice deterred anyone from objecting. (Indeed, Mr. Clayton, a lay person, was not deterred by the possibility he might be deposed regarding his objections.) On that basis alone, it should be rejected. *See In re AT & T Mobility*, 789 F. Supp. 2d at 970 (rejecting objector's contention that notice's statement that objectors may be deposed deterred objections because no evidence was presented in support); *In re Cendant Corp.*, 264 F.3d at 235 (discarding objections to notice which were based on speculation). "To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely

thwart the settlement process." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 294 (W.D. Tex. 2007) (citation omitted).

Furthermore, "[i]n order to prevent spurious objections to a class action settlement, most notices of proposed settlement…contain a mandatory procedure that objectors must follow." 4 Conte & Newberg, Newberg on Class Actions § 11:56, p. 181 (4th ed. 2002). Courts have recognized the problems caused by so-called professional objectors, who assert meritless objections in large class action settlement proceedings to extort fees or other payments.[71] Requiring objectors to make themselves available for depositions and that they list prior objections to class action settlements is a reasonable precaution, and not uncommon.[72] Indeed, these are seen as a reasonable safeguard and advice to them of their legal rights and obligations. *See In re AT & T Mobility Wireless Data Services Sales Tax Litig.,* 789 F. Supp. 2d at 970; *Fed. R. Civ. P.* 30(a)(1) ("A party may, by oral questions, depose any person…").

---

[71]     *See, e.g., Vollmer v. Selde*n, 350 F.3d 656, 659–63 (7th Cir. 2003); *Duhaime v. John Hancock Mut. Life Ins. Co*., 183 F.3d 1, 6–7 (1st Cir. 1999); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., 2010 U.S. Dist. LEXIS 131775(W.D. Ky. Dec. 13, 2010); *Dewey v. Volkswagen of Am*., 728 F.Supp.2d 546, 575 (D.N.J. 2010); *In re Initial Public Offering Sec. Litig*., 728 F.Supp.2d 289, 295 (S.D.N.Y.2010); *In re United Health Group Inc. PSLRA Litig*., 643 F.Supp.2d 1107, 1109 (D.Minn.2009).

[72]     *See, e.g., Saltzman et al. v. Pella Corporation et al.* Case No. 06-cv-4481 (ND. Ill.) (notice appearing at www.windowsettlement.com requiring objectors make themselves available for depositions); *DeHoyos*, 240 F.R.D. at316 (W.D. Tex. 2007)(overruling disclosure requirement regarding past class action objections); *Davis Landscape, et al. v. Hertz Equipment Rental Corp*., No. 06-3830 (D.N.J.)(notice appearing at www.hertzldwsettlement.com requiring disclosure of past class action objections); *Lynn Henderson, et al. v. Volvo Cars of North America, LLC, et al.*, Case No. 2:09-cv-04146-CCC-JAD (D.N.J.) (notice appearing at www.hendersontransmissionsettlement.com requiring disclosure of past class action objections for the past five years); *see generally* Bruce D. Greenberg, *Keeping the Flies Out of the Ointment: Restricting Objectors to Class Action Settlements*, 84 St. John's L. Rev. 949, 985 (2010)(recommending courts consider requiring objectors to submit to depositions by parties and listing past class-action objections in order to curb abuses from professional objectors).

Mr. Love's objection tries to distinguish *In re AT & T Mobility*, 789 F. Supp. 2d at 970, on the grounds that in that case class counsel notified class members that their deposition *may* be taken to determine the grounds for their objection [Dkt. 112 at 4]. This is a distinction without a difference. Here, the long-form Notice and Court's Preliminary Approval Order simply advise objecting Class Members that they shall make themselves *available* for deposition. They do not state that objectors' depositions *will* be conducted, as Love suggests [*id*.]. Mr. Love also cites to *Freebird, Inc. v. Merit Energy Co*., 2012 U.S. Dist. LEXIS 173075 (D. Kan. Dec. 6, 2012) [Dkt. 112 at 4], but that that case, in contrast, is truly distinguishable because the court there had not already issued a notice or preliminary approval order.

Here, in the end, Mr. Love contends that the Court's Preliminary Approval Order and nationwide notices are defective and must be modified. In order to do so, Love has the obligation under *Fed. R. Civ. P.* 61 to prove to the Court that a party's substantial rights have been affected. *See Fed. R. Civ. P.* 61. ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *see also In re Lawnmower Engine Horsepower Mktg*. & Sales Practices Litig., 2010 U.S. Dist. LEXIS 121684, *19-21 (E.D. Wis. Oct. 28, 2010)(Errors that affect a party's "substantial rights" ordinarily are those that create a reasonable probability that the error affected the outcome of the case. *Id*. (citing *United States v. Marcus*, 560 U.S. 258 (U.S. 2010)). Mr. Love does not satisfy this burden. Mr. Love does not present any evidence that anyone's substantial rights were affected in any way by the settlement's objection procedures. He merely hypothesizes that this may be the case, while Love admits that some objectors may be deposed in certain circumstances [Dkt. 112 at 4]. These are not grounds for modifying the Court's Preliminary Approval Order and redoing the entire notice program. As the court in *In re AT & T Mobility*, 789 F. Supp. 2d at 970 concluded:

37

> This is not a well-founded objection. Apprising objectors of their legal rights and obligations is entirely proper, even if such notification has a marginal deterrent effect. Moreover, the objectors have not presented any evidence that this notice deterred anyone from objecting, including themselves.

*Id.*

Mr. Love's final objection is that there was a typographical error in the on-line downloadable Claim Form's statement of the due date. As explained by the Settlement's Administrator in his affidavit, this typographical error was of course immediately corrected upon it being called to Mr. Dahl's attention, and to Dahl's knowledge no Class Member was affected.[73] Indeed, Mr. Love in his supplemental submission agrees that the prompt correction mitigated any potential effects of the typographical error. [Dkt. 112 at 3 n.5] This, therefore, is a non-issue, and his objection on this point is moot. *See Fed. R. Civ. P.* 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.")

\* \* \*

The upshot of all this, in sum, is that neither one of the two objections in this case has any substantive merit and therefore they should be overruled. It also bears noting that Class Action Fairness Act ("CAFA") notice of the settlement was provided to government entities, and not a single one of them has voiced objection to the settlement.[74] *See Henderson* 2013 U.S. Dist. LEXIS 46291 at \*39. This overwhelmingly positive reaction to the settlement supports this *Girsh* factor.

---

[73]   Dahl Affidavit at ¶26.

[74]   Dahl Affidavit at ¶¶6-7

### 5. The Ability of the Defendants to Withstand a Greater Judgment

There can be no dispute that Defendants have ample resources. Where, as here, the Defendants' ability to pay most likely exceeds the potential liability, and was not a factor in settlement negotiations, the factor is neutral. *See McLennan*, 2012 U.S. Dist. LEXIS 27366 at *18 (citing *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.,* 269 F.R.D. 468, 489 (E.D.Pa. 2010) ("[B]ecause ability to pay was not an issue in the settlement negotiations, this factor is neutral")); *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d at 538 ("[The] fact that [Defendant] could afford to pay more does not mean that it is obligated to pay any more than what the ... class members are entitled to under the theories of liability that existed at the time the settlement was reached").

### 6. The Settlement Falls Well Within the Range of Reasonableness in Light of All the Attendant Risks of Litigation Favors Approval

This *Girsh* factor—the range of reasonableness considering the best possible recovery and the risks of litigation—also supports approval of the settlement. The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement."' *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Given the size of the settlement Class, the potential benefits available (not the least of which is a $11,004,000 Common Fund pegged to substantial percentages of the moneys paid being refunded), that a business practice change was achieved through this litigation, the streamlined claims process with relaxed burdens of proof afforded by the settlement, the lack of opposition to the settlement, and the aforementioned risks in proving liability and damages and in obtaining class certification, the settlement Agreement fairly and adequately rewards the Class

and squarely falls within the range of reasonableness. Accordingly, the settlement Agreement is fair, adequate and reasonable under the *Girsh* analysis.

### C. The Best Practical Notice was Provided to the Settlement Class

In its Preliminary Approval Order [DE 100 at ¶ 6], the Court approved the content of the notice and its method of dissemination and found that they met due process. In accordance with the Agreement and the Court's Preliminary Approval Order [Dkt. 100 at ¶ 6], the Settlement Administrator, Dahl, and the Parties, commenced the process of notifying Class Members of the settlement and its terms.[75]  Jeffrey D. Dahl has submitted an affidavit that indicates the multiple avenues of notice provided to Class Members [Dkt 114] Mr. Dahl is the President of Dahl Administration LLC, which is responsible for administering the settlement and implementation of the notice plan. *See* Dahl Affidavit at ¶ 3.

Federal Rules of Civil Procedure 23(c)(2) and 23(e) describe the notice required to class members prior to a settlement and final certification. *In re LG/Zenith Rear Projection Television Class Action Litig.,*), 2009 U.S. Dist LEXIS 13568 at *5 (citing *In re Prudential Ins. Co. Sales Practice Litig.,* 962 F.Supp. 450, 526 (D.N.J. 1997). Rule 23(c)(2) requires that in Rule 23(b)(3) class actions, such as this one:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> **(i)** the nature of the action;
>
> **(ii)** the definition of the class certified;
>
> **(iii)** the class claims, issues, or defenses;

---

[75]     Dahl Affidavit at ¶8 *et seq.*

40

**(iv)** that a class member may enter an appearance through an attorney if the member so desires;

**(v)** that the court will exclude from the class any member who requests exclusion;

**(vi)** the time and manner for requesting exclusion; and

**(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

And prior to approving a class settlement, Rule 23(e)(1) further provides that a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." "The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. at 225 (citation omitted). Here the notice plan ordered by the Court has been effectuated in compliance with the Court's Preliminary Approval Order and due process and complies with Federal Rules of Civil Procedure 23(c)(2) and 23(e).

### 1. Dissemination of the Notice

"To assess the adequacy of the notice, the Court must consider both the notice's mode of dissemination and its content." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997). The Supreme Court has emphasized that Rule 23(c)(2)'s "best notice" language requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173, 175 (1974)(finding that for individual class members whose names and addresses are ascertainable, individual mailed notice is the best practicable notice). Courts have deemed pre-paid notice by mail to the last known addresses of class members as "ideal." *Varacallo*, 226

F.R.D. at 225 (collecting cases). Here, Defendants provided Dahl a list in electronic format containing the names and addresses of 1,821,849 unique potential Class Members.[76] After entering the list into a database created for the administration of this settlement, scrubbing it for incomplete or missing addresses that could not be mailed. and searching and updating all listings through a USPS change of address database, Dahl mailed the Summary Notice to 1,663,248 Class Members nationwide on July 24, 2013.[77]  Dahl then re-mailed the Summary Notices that were returned by the USPS with forwarding addresses or where a new address was found by a firm specializing in updating addresses for returned mail.[78]  Additionally, on June 7, 2013, Defendants mailed the CAFA notice of settlement (including among other things, the entire settlement Agreement) to appropriate government officials, including US Attorney General and state Attorneys' General across the U.S.[79]

Publication notice is considered a sufficient means to reach those class members whose identities and addresses are not known. *In re LG/Zenith*, 2009 U.S. Dist LEXIS 13568 at *7 (citing *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.,* 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed.R.Civ.P. 23 and the due process clause.")). Accordingly, in addition to mailed notice, as set forth in the Parties' Agreement, Dahl caused two placements of the summary notice publication in USA Today — one appeared in USA

---

[76]    Dahl Affidavit ¶8.

[77]    *See* http://hertzplatepasssettlement.com/info/dates; Dahl Affidavit at ¶ 10.

[78]    Dahl Affidavit ¶15.

[79]    *Id. ¶¶*6-7

Today on August 15, 2013, and the other appeared in that publication on September 18, 2013. [80]

Class Counsel also published a press release announcing the settlement on July 31, 2013.[81]

### 2. Content of the Notice

The content of settlement notice under Rule 23(e) must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the fairness hearing. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997) *aff'd sub nom. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998)(citation omitted). Under Rule 23(e), settlement notice is however designed to be only "a summary of the litigation and the settlement [and] it is crucial to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 527. (citing 2 *Conte & Newberg, Newberg on Class Actions* § 8.32, at 8– 109 and *Grunin v. International House of Pancakes,* 513 F.2d 114, 122 (8th Cir. 1975) ("Class members are not expected to rely upon the notices as a complete source of settlement information").

To that end that end, the long-form Notice, Summary Notice, Settlement Agreement, Preliminary Approval Order, attorney fee application and declarations, and Claim Form appear on the settlement website, with Summary Notice postcards being sent out to 1.6 million class members summarizing the Settlement and Settlement Proceedings and inviting them to visit the

---

[80]    *Id.* ¶¶19-21

[81]    *See* http://www.prnewswire.com/news-releases/hertz-rental-customers-to-receive-refunds-of-certain-platepass-fees-and-related-charges-incurred-under-proposed-class-action-settlement-217820661.html.

website or call a toll free number to obtain more detailed information and file a claim. [82]   The long-form Notice was formatted to be similar in style and approach to the class notice models available on the Federal Judicial Center's ("FJC") website, www.fjc.gov. Dahl established a toll-free information line and the number for that line appeared in the mailed Summary Notice, on the settlement website, and in the Publication Notice.[83]   The settlement website further contains a comprehensive explanation of the settlement terms in a series of FAQs.[84] The Settlement's Notice long-form Notice, the website, and the mailed Summary Notice, individually or in concert stated, among other things: the nature of the case, the settlement Class definition, and the claims and defenses; the possibility to appear with counsel; the timing, manner, and place to object; the Final Approval Hearing location, date and time; the stakes involved; that settlement Class Members would be bound and how they would be bound; the amount of the Common Fund and payment formula under the settlement; the amount of attorneys' fees and service awards which would be requested; what was required to participate in the settlement; how to opt out and the effect of doing so; and where to call (toll-free) to get more information.

In light of the foregoing, the notice program, incorporating both mailed and publication notice, met or exceeded due process and the requirements in *Fed. R. Civ. P* 23 (c) and (e).

## VI.    CONCLUSION

For all of the forgoing reasons final approval of the settlement should be granted and the negotiated fees and cost reimbursements awarded in connection with the approval of the settlement.

---

[82]    See Dahl Affidavit detailing the notice efforts.

[83]    Dahl Affidavit ¶28 et seq.

[84]    *See* http://hertzplatepasssettlement.com/info/faq; Dahl Affidavit at ¶22 et seq.

Respectfully Submitted :

DATED: October 4, 2013.

    /s/ Michael Coren
Christopher M. Placitella, Esq.
Michael Coren, Esq.
COHEN, PLACITELLA & ROTH, PC
127 Maple Avenue
Red Bank, NJ 07701-1717
(732) 747-9003
*Attorneys for Plaintiffs and the Class*

Of Counsel:

Steven R. Jaffe, Esq.
Mark S. Fistos, Esq.
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
(Admitted *pro hac vice*)
*Attorneys for Plaintiffs and the Class*

Stephen A. Dunn, Esq.
EMANUEL & DUNN, PLLC
Post Office Box 426
Raleigh, North Carolina 27602
(919) 832-0329
(Admitted *pro hac vice*)
*Attorneys for Plaintiffs and the Class*

45

## CERTIFICATION OF SERVICE

I, Michael Coren, Esquire, of full age, hereby certify that on 4th day of October, 2013, a true and correct copy of the foregoing Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement was filed with the Court's CM/ECF system and will be served on all counsel of record listed below through the ECF system or by U.S. Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Michael J. Vassalotti, Esquire
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
*Attorneys for Defendant, The Hertz Corporation*

Ross B. Bicker, Esquire
John F. Ward, Jr., Esquire
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
*Attorneys for Defendant, The Hertz Corporation*

Paul M. Sanford, Esquire
Thomas T. Reith, Esquire
Benjamin C. Caldwell, Esquire
BURNS & LEVINSON LLP
One Citizens Plaza
Suite 1100
Providence, RI 02903
*Attorneys for Defendants American Traffic Solutions, Inc. and PlatePass, LLC.*

Judd Clayton
1724A Oleander Drive
Dickinson, TX 77539

Kevin B. Love
8150 SW 143 Street
Miami, FL 33158

Dated: October 4, 2013

Michael Coren, Esq.
COHEN, PLACITELLA & ROTH, P.C.
127 Maple Avenue
Red Bank, NJ 07701-1717
(732) 747-9003
Attorneys for Plaintiffs and the Class