**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DWIGHT SIMONSON, SUSAN DOHERTY, individually and on behalf of all others similarly situated,<br>Plaintiffs,<br>v.<br><br>THE HERTZ CORPORATION,<br>AMERICAN TRAFFIC SOLUTIONS, INC.,<br>and PLATEPASS LLC<br>Defendants. | Civil Action No. 1:10-cv-00359-NLH-KMW |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AGREED-UPON ATTORNEY'S FEES, EXPENSE REIMBURSEMENT, AND CLASS REPRESENTATIVE SERVICE FEE AWARDS**

Submitted by:

COHEN, PLACITELLA & ROTH, PC
Christopher M. Placitella, Esq.
Michael Coren, Esq.
127 Maple Avenue
Red Bank, NJ 07701-1717
(732) 747-9003
*Attorneys for Plaintiffs and the Class*

Steven R. Jaffe, Esq.
Mark S. Fistos, Esq.
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
(Admitted *pro hac vice*)
*Attorneys for Plaintiffs and the Class*

Stephen A. Dunn, Esq.
EMANUEL & DUNN, PLLC
Post Office Box 426
Raleigh, North Carolina 27602
(919) 832-0329
(Admitted *pro hac vice*)
*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

A. The Starting Point: *Boeing v. Van Gemert*. ........ 3

B. The Vast and Overwhelming Majority of Courts Embrace *Boeing's* Analysis. ........ 5

1. This District and the Third Circuit Follow *Boeing*. ........ 5
2. The Vast Majority of Other Jurisdictions Follow *Boeing*. ........ 6
3. *Boeing* Applies to Settlement Classes. ........ 9

III. ATTORNEYS' FEES UNDER THE SETTLEMENT ARE PROPERLY BASED ON THE ENTIRE SETTLEMENT VALUE ........ 11

A. The Settlement made immediately available a direct, concrete, and calculable benefit, which distinguishes this case from cases emphasizing the claim rate. ........ 11

B. A modest claim-filing rate does not diminish the total settlement value won by Class Counsel or negate its use as a benchmark to assess Class Counsels' fees under *Boeing*. ........ 15

1. *Boeing* distinguishes creation of benefits from their utilization by beneficiaries, awarding fees based on benefit creation. ........ 16
2. This class action settlement created direct monetary class benefits and implemented measures to facilitate benefits utilization by Class Members. ........ 17

C. If actual claims total is the benchmark, Class Counsel will be unjustifiably punished in this case and counsel for plaintiffs in the future will shy away from other important small-claim class actions. ........ 24

D. If Total Actual Claims Made Rates is used as the Benchmark for Awarding Class Counsel's Attorney Fee Awards, the Deterrence Function of Rule 23 Will be Undermined in this Case and Others. ........ 28

E. If the actual claims total is the benchmark, class settlements will be less likely and classes will not necessarily be better served. ........ 30

IV. NO DISABLING CONFLICT ARISES NOR EXISTED IN THIS MATTER BY REASON OF A FAMILY RELATIONSHIP BETWEEN A CLASS REPRESENTATIVE AND FORMER COUNSEL ........ 33

V. CONCLUSION ..... 36

## TABLE OF AUTHORITIES

**Cases**

*A & L Indus. v. P. Cipollini, Inc.*, 2013 U.S. Dist. LEXIS 142463 (D.N.J. Oct. 2, 2013) ........... 29

*Adams v. Inter-Con Sec. Sys., Inc.*, 2007 U.S. Dist. LEXIS 83147 (N.D. Cal. Oct. 30, 2007) .... 22

*Alin v. Honda Motor Co.*, 2012 U.S. Dist. LEXIS 188223 (D.N.J. Apr. 12, 2012) ........... 6, 22, 23

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010) ............................... 7, 23

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................... 27

*Amunrud v. Sprint Communs. Co. L.P.*, 2012 U.S. Dist. LEXIS 17258 (D. Mont. Feb. 10, 2012) 7

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)............................................................... passim

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio 1996)...................................................... 12

*Brown v. Esmor Corr. Servs.*, 2005 U.S. Dist. LEXIS 17042 (D.N.J. Aug. 10, 2005) .................. 6

*Cohen v. Bloch*, 507 F. Supp. 321 (S.D.N.Y. 1980) .................................................................... 34

*David v. American Suzuki Motor Corp.*, No. 08-22278, slip op. (S.D. Fla. April 15, 2010) ....... 12

*Deposit Guar. Bank v. Roper*, 445 U.S. 326 (1980) .................................................................... 27

*Drazin v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 832 F. Supp. 2d 432 (D.N.J. 2011) ........................................................................................................................................... 6

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974)................................................................... 27

*Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233 (D.N.J. 2008).......................................... 33

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008)................................................................... 29

*Fischer v. International Tel. & Tel. Corp.*, 72 F.R.D. 170 (E.D.N.Y. 1976) ............................... 34

*Gammon v. GC Services Ltd. P'ship*, 162 F.R.D. 313 (N.D. Ill. 1995) ....................................... 29

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)................................................. 9

*Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013) ........................................................................................................................ 32

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................................ 11

*In re AT&T Fiber Optic Cable Installation Litig.*, 2003 U.S. Dist. LEXIS 15795 (S.D. Ind. Aug. 21, 2003) ........................................................................................................................ 8

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013)...................................... passim

*In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722 (3d Cir. 2001)....................................... 10

*In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) .................................................. 32

*In re Copley Pharmaceutical, Inc.*, 1 F.Supp.2d 1407 (D.Wyo. 1998) ................................... 9, 28

*In re Crazy Eddie Secs. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) ................................................ 9

*In re Diet Drugs Product Liability Litig.*, 582 F.3d 524 (3d Cir. 2009) ...................................... 26

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ...................................................................................................................... 18, 21

*In re Indep. Energy Holdings PLC*, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) .. 22

*In re Ins. Brokerage Antirust Litig.*, 2007 U.S. Dist. LEXIS 40729 (D.N.J. June 5, 2007) ......... 32

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009)................................................ 6

*In re Int'l Harvester Co.*, 104 F.T.C. 949 (1984)......................................................................... 28

*In re Matzo Food Products Litig.*, 156 F.R.D. 600 (D.N.J. 1994)............................................... 15

*In re Par Pharm. Sec. Litig.*, 2013 U.S. Dist. LEXIS 106150 (D.N.J. July 29, 2013) .................. 5

*In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287 (D.N.J. May 14, 2012) .......... 32

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 106 F. Supp. 2d 721 (D.N.J. 2000) ....... 30

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005)...................................................... 11

*In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001)................................................ 8

*In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395 (D. Mass. 2008).......................... 12

*Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303 (D. Mass. 1987)............................................. 34

*Koppel v. Wien*, 743 F.2d 129 (2d Cir. 1984) .................................................................... 9

*Lewis v. Goldsmith*, 95 F.R.D. 15 (D.N.J.1982) ............................................................... 33

*Local 56, United Food and Commercial Workers Union v. Campbell Soup Co.*, 954 F. Supp. 1000 (D.N.J. 1997)........................................................................................................ 30

*Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289 (E.D. Cal. Sept. 1, 2011) ........................... 7

*Lucas v. Kmart Corp.*, 234 F.R.D. 688 (D. Colo. 2006)............................................................ 21

*Martina v. L.A. Fitness Int'l, Inc.*, 2013 U.S. Dist. LEXIS 145285 (D.N.J. Oct. 8, 2013) ..... 23, 24

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) .................................... 7

*McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) .................................................... 6

*McGee v. Cont'l Tire N. Am., Inc.*, 2009 U.S. Dist. LEXIS 17199 (D.N.J. Mar. 4, 2009)........... 32

*McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806 (E.D. Wis. 2009)...................... 7

*Petruzzi's, Inc. v. Darling–Delaware Co.*, 983 F.Supp. 595 (M.D.Pa. 1996) ....................... 12, 15

*Pierce v. Underwood*, 487 U.S. 552 (1988).................................................................... 11

*Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007)....................................... 8

*Pro v. Hertz Equip. Rental Corp.*, 2013 U.S. Dist. LEXIS 86995 (D.N.J. June 20, 2013) .......... 30

*Reinhart v. Lucent Techs., Inc. (In re Lucent Techs., Inc. Sec. Litig.)*, 327 F. Supp. 2d 426 (D.N.J. 2004) ............................................................................................................. 14

*Rossi v. Proctor & Gamble*, 2013 U.S. Dist. LEXIS 143180 (D.N.J. Oct. 3, 2013).............. 21, 30

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)............. 9, 15

*Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir. 1988) ................................................. 10

*Solo v. Bed Bath & Beyond, Inc.*, 2007 U.S. Dist. LEXIS 31088 (D.N.J. Apr. 26, 2007) ........... 29

*Sprague v. Ticonic*, 307 U.S. 161 (1939)........................................................................ 10, 11

*Strong v. Bell South Telecomm., Inc.*, 137 F.3d 844 (5th Cir. 1998).......................................... 12

*U.S. ex rel. Bogart v. King Pharm.*, 493 F.3d 323 (3d Cir. 2007) ................................................ 6

*Umbriac v. American Snacks, Inc.*, 388 F. Supp. 265 (E.D. Pa. 1975) ....................................... 34

*Van Gemert v. Boeing Co.* 590 F.2d 433 (2d Cir. 1978) ..................................................... passim

*Van Gemert v. Boeing Co.*, 739 F.2d 730 (2d Cir. 1984) ............................................... 10, 25, 26

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir.1999)........................ 8, 10, 21, 23

*Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377 (D.N.J. 1998)......................................... 34

*Williams v. Centerplate, Inc*., 2013 U.S. Dist. LEXIS 121307 (S.D. Cal., Aug. 26, 2013) ........... 7

*Williams v. MGM–Pathe Commun. Co.*, 129 F.3d 1026 (9th Cir.1997) ................................. 8, 10

**Other Authorities**

Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?*, 158 U. Pa. L. Rev. 2043 (2010) ........................................................................................................................ 15

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809 (2000). ........................................................................................... 31

*Court Awarded Attorney Fees*, 108 F.R.D. 237 (1985) .............................................................. 20

Hailyn Chen, *Attorneys' Fees and Reversionary Fund Settlements in Small Claims Consumer Class Actions*, 50 UCLA L. Rev. 879 (2003) ....................................................... 28, 30

Myriam Gilles & Gary B. Friedman, *Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers*, 155 U. Pa. L. Rev. 103 (2006). ................................ 17, 29

Myriam Gilles, *Class Dismissed: Contemporary Judicial Hostility to Small-Claims Consumer Class Actions*, 59 DePaul L. Rev. 305 (2010) ........................................................... 16

Ralph C. Ferrara, Riva Khoshaba Parker, *Tontine or Takeback: Reversion Provisions in Class Action Settlement Agreements*, 62 Bus. Law. 971 (May 2007) ............................................... 10

T. Allen, *Anticipating Claims Filing Rates in Class Action Settlements*, Class Action Perspectives, Vol. III No. 2 (Rust Consulting, Inc. Nov. 2008) ............................................. 16

**Treatises**

Newberg, Herbert B. *et al*, *Newberg on Class Actions* §14.6 (4th Ed.) ........................................ 3

## I. INTRODUCTION

This Court held a hearing October 15, 2013 [Dkt. 122] on the Parties' joint motion for final settlement approval of their class action settlement and Class Counsels' motion for agreed-upon fees [Dkt.106]. As to class counsel's fee award motion the Court at the hearing requested further briefing as follows:

> On the issue of attorneys' fees, I want some additional briefing…I haven't had the opportunity to see cases, address the issue of whether—in the circumstances in which the actual recovery falls dramatically short of the potential recovery, whether the Court should engage in some separate analysis of the reasonableness of the fee. It may be that courts don't go there, they don't need to go there, and the courts that have gone there should not visit on the attorneys any detriment arising out of the unwillingness or inability or lack of desire of individual class members to actually seek a claim.
>
> But I'm willing to say now that it seems to me that the overall financial provisions of a settlement, in almost all cases, are ultimately distributed to class members, and, with that presumption, it would seem to me to be fair to use the overall number for computing the fee. But where a Court knows, and this Court now knows, that there's likely to be a much smaller recovery than the pledged funds, I'm just wondering whether I need to take a second hard look at it. The Third Circuit has been very clear that this Court has an obligation to scrutinize fees, to separately analyze them.
>
> I think having the final number at the end of the claims process may be beneficial to the Court in assuring itself that the fee is reasonable.

*Transcript of Fairness Hearing* held October 15, 2013 ("Hr'g. Tr.")[Dkt. 122] at 76-77. Class counsel accordingly submit this supplemental memorandum in response to the Court's requests.[1]

We begin by first addressing what we believe to be an incorrect premise: that "in almost

[1] In their memorandum filed in support of their fee request, Class Counsel thoroughly discussed the benefits of the Settlement Agreement, why this settlement is a common fund case, and, as such their entitlement to a fee based upon a percentage of the benefits conferred on Class Members under the Settlement [Dkt. 106-2]. We adopt that discussion herein by reference.

all cases" financial benefits of a settlement are distributed to class members. As explained below, that is not typically so — especially in small-claim consumer class actions such as this. In this regard Class Counsel provide the Court with substantial background and exposition on the seminal case in this area of common benefit counsel fees, *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), as well as its progeny. Then proceeding from that class counsel discuss why "total settlement value," as opposed to the amount actually paid out or distributed to class members, is the appropriate and accepted benchmark to gauge Class Counsels' fees *sub judice* under the Parties' Settlement Agreement. [2]

We then turn to the Court's other concern it invited comments on: whether it is proper for class representative Plaintiff Susan Doherty's former counsel, Friedman Doherty, LLC ("Friedman Doherty"), to share in any counsel fee award because of the familial relationship between Ms. Doherty and her brother Donald Doherty, Esquire, a member of Friedman Doherty. As set out in Section IV below, that family relationship neither *per se* disabled Friedman Doherty from serving as class counsel nor disqualifies its members presently from sharing in any fee award by the Court to Class Counsel pursuant their referral agreement with one of the co-class counsel in this matter, Christopher M. Placitella, Esquire. Mr. Placitella is a shareholder of Cohen, Placitella & Roth, PC, serves as co-class counsel, and is a New Jersey Certified Civil Trial Attorney who under N.J. Rule 1:39-5 is authorized under New Jersey law to pay a referral fee to attorneys referring matters to trial counsel. Furthermore, the fee allocation agreed to

[2] As of the November 22, 2013 claims closure date, Dahl Administration, the appointed claims administrator, received 104,967 timely claims. These claims have a total distribution value of $810,053.73. That is a claims rate of 6.2% based upon the 1.67 million class members to who notice of Settlement and the claims procedure was mailed.

Friedman Doherty among counsel, ie. 25% of the fees awarded to and received by undersigned Class Counsel firms, is fair, reasonable and commensurate to the significant work and the significant benefits the Friedman Doherty firm bestowed upon the class prior to their referring the *Doherty* case to Mr. Placitella.

## II. BACKGROUND

### A. The Starting Point: *Boeing v. Van Gemert.*

The leading treatise on class actions states the following black letter law on determining class counsel fee awards:

> "In *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980), the Supreme Court settled this question of whether class fund fees are based on the gross settlement or net settlement funds actually claimed by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed."

Newberg, Herbert B. *et al*, *Newberg on Class Actions* §14.6 (4th Ed.). In *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)("*Boeing*"), the Boeing Company had offered to redeem certain convertible debentures for common stock with a market value more than 50% above the cash redemption value. After the deadline for redemption, a class of debenture holders sued the company for failing to give them adequate notice of the redemption offer. The district court ultimately entered judgment for the plaintiff class consisting of damages and prejudgment interest. In the subsequent claims process, less than half of the potential claimants made claims. Plaintiff's counsel requested attorneys' fees of approximately $2,000,000. The district court awarded fees based on the class benefit from the amount of the judgment regardless of the sum actually claimed. A panel of the Second Circuit reversed, but the Second Circuit *en banc* later affirmed the district court decision, *Van Gemert v. Boeing Co.* 590 F.2d 433 (2d Cir. 1978) (*en banc*), finding that each class member "had a present vested interest in the class recovery"

and that each could collect his share of the judgment upon request. Thus, the court held, absentee class members had received a benefit within the meaning of the common-fund doctrine. *Id*., at 438-439.

The Boeing Company then sought and received certiorari review from the Supreme Court on the question whether a proportionate share of fees awarded to counsel who represented the successful class may be assessed against the unclaimed portion of the fund created by the judgment. The defendant, Boeing Company, asserted attorney fees could only be awarded from the actual claimed funds:

> Boeing appealed only one provision of the judgment. It claimed that attorney's fees could not be awarded from the unclaimed portion of the judgment fund for at least two reasons. First, the equitable doctrine that allows the assessment of attorney's fees against a common fund created by the lawyers' efforts was inapposite because the money in the judgment fund would not benefit those class members who failed to claim it. Second, because Boeing had a colorable claim for the return of the unclaimed money, awarding attorney's fees from those funds might violate the American rule against shifting fees to the losing party. Therefore, Boeing contended, the District Court should award attorney's fees from only the portion of the fund actually claimed by class members.

*Boeing*, 444 U.S. at 477.

The United States Supreme Court disagreed, concluding that attorneys representing a successful class are entitled to fees from the fund as a whole, not just the claimed funds. In doing so, the Supreme Court agreed with and affirmed the Second Circuit's *en banc* decision holding that awarding fees from the unclaimed portion of the judgment did not improperly shift fees to the losing party. All members of the class, even those not claiming their share of the judgment, were “at least the equitable owners of their respective shares in the recovery.” *Boeing*, 444 U.S. at 482. The Supreme Court then held that class counsel's fee award may be measured by the size of the common fund established for the benefit of the class and not merely by the

value of the claims eventually asserted against the fund, determining "[class members'] right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorneys' fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs." *Id*. at 480 (emphasis added).

Boeing also argued that the judgment against it was merely a procedural device by which it paid into escrow its maximum possible liability but the amount of the judgment was not final until the claims deadline; therefore, the judgment did not confer a benefit on non-claiming class members. *Id*. at 479 n. 5. The Supreme Court rejected this argument also finding "[n]othing in the [district] court's order made Boeing's liability for [the entire amount of the judgment] contingent upon the presentation of individual claims." *Id*.

**B. The Vast and Overwhelming Majority of Courts Embrace *Boeing's* Analysis.**

In the wake of *Boeing*, no federal appellate court has mandated that "results achieved" be measured by the amount of "claims paid." To the contrary, four circuits (the Second, Third, Ninth, and Eleventh) and the U.S. Supreme Court, consistent with *Boeing*, either require, or at a minimum, encourage a trial court to exercise its discretion to award fees based on the total value of benefits made available to class members.

**1. This District and the Third Circuit Follow *Boeing*.**

This Court and the Third Circuit consistently cite *Boeing* for the proposition the whole fund established for the benefit of class members serves as a proper benchmark for calculating the attorney's fee award. *See, e.g.*, *In re Par Pharm. Sec. Litig.*, 2013 U.S. Dist. LEXIS 106150, at *26 (D.N.J. July 29, 2013) (citing *Boeing* and discerning "[t]he Supreme Court has long

recognized that 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund *as a whole'*") (emphasis supplied); *In re Baby Products Antitrust Litig*., 708 F.3d 163, 177 (3d Cir. 2013) (acknowledging *Boeing* "confirmed the permissibility of using the entire fund as the appropriate benchmark…"); *Alin v. Honda Motor Co*., 2012 U.S. Dist. LEXIS 188223, at *57 (D.N.J. Apr. 12, 2012) (citing *Boeing* and finding the fund as a whole the proper benchmark, irrespective of whether all class members submit claims); *McCoy v. Health Net, Inc*., 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (quoting *Boeing* and its holding that the fee is assessed against the "the fund as a whole"); *U.S. ex rel. Bogart v. King Pharm.*, 493 F.3d 323, 329 (3d Cir. 2007) (citing holding in *Boeing* and Supreme Court's approving assessment of attorney's fees against the entire fund to prevent inequity); *cf. Drazin v. Horizon Blue Cross Blue Shield of New Jersey, Inc*., 832 F. Supp. 2d 432, 439 (D.N.J. 2011) (noting "[u]nder the common fund doctrine, the plaintiff class as a whole…bears the burden of attorneys' fees"); *In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241, 283 (3d Cir. 2009) (finding that "[i]n order to test the reasonableness of the fee under this method, the District Court needed to determine what amount of the *total* settlement value could be attributed to the work of Class Counsel") (emphasis supplied.); *Brown v. Esmor Corr. Servs*., 2005 U.S. Dist. LEXIS 17042, at *58 (D.N.J. Aug. 10, 2005)(awarding of 33 1/3% of fund made available to potential recipients who submit claim for relief).

### 2. The Vast Majority of Other Jurisdictions Follow *Boeing*.

The vast majority of federal courts in other jurisdictions also embrace this interpretation and application of *Boeing.* Some even find it an abuse of discretion for a court to award fees based just on the total amount of claims submitted rather than the whole amount made available to class members. Illustrative cases include:

- *Williams v. Centerplate, Inc.*, 2013 U.S. Dist. LEXIS 121307, at * 19 n.2 (S.D. Cal., Aug. 26, 2013) (finding "in determining the reasonableness of the requested attorneys' fees the district court should calculate the fees as a percentage of the entire common fund").

- *Amunrud v. Sprint Communs. Co. L.P.*, 2012 U.S. Dist. LEXIS 17258, at *6 (D. Mont. Feb. 10, 2012)(discerning "it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by Sprint's separate payment of attorney's fees and expenses, and the expenses of administration).

- *Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *32 (E.D. Cal. Sept. 1, 2011) (determining in *Boeing*, "the Supreme Court settled this question of whether class fund fees are based on the gross settlement or net settlement funds actually claimed by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed") (citation omitted).

- *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010)(finding "[a]n allocation of fees by percentage should…be awarded on the basis of the total funds made available, whether claimed or not") (citation omitted).

- *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (citing *Boeing* and finding, "[a]n award of attorneys' fees is appropriately based upon the total common fund and not on the amount claimed against it. The $2.1 million settlement amount was available to the entire class, regardless of the fact that a small number of class members actually filed claims. Therefore, an award of attorneys' fees should be calculated based upon the full benefit").

- *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 435-438 (2d Cir. 2007)

(holding that the district court abused its discretion by calculating fees based strictly on the actual recovery, expressly rejecting the idea that basing the award on the available benefit would create a windfall for class counsel, and finding the instructions in the PSLRA and CAFA inapplicable).

- *In re AT&T Fiber Optic Cable Installation Litig.*, 2003 U.S. Dist. LEXIS 15795, at *6 (S.D. Ind. Aug. 21, 2003) (citing *Boeing* and holding "[f]or purposes of determining the reasonableness of fees, however, the court is not concerned with the fact that return rates for claims forms were less than 100 percent").

- *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1296 (11th Cir.1999) Cert den. 530 U.S. 1223, *rehearing denied*, 530 U.S. 1289 (2000) (rejecting the argument that fees should be based on the class members' claims against the fund rather than on a percentage of the entire fund).

- *Williams v. MGM–Pathe Commun. Co.*, 129 F.3d 1026, 1027 (9th Cir.1997) (reversing district court award of 33 percent of the claimed fund ($3,300) and awarding attorneys' fees of 33 percent of the available fund ($1.5 million)).

- *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 n.5 (S.D. Fla. 2001) (finding "[i]n *Boeing*, the Supreme Court settled the question of from what amount the fees should be calculated: from the total fund or only that actually paid out. The Court "rul[ed] that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.") (citation omitted).

- *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007)(finding the fee "percentage applies to the total fund created, even where the actual payout following the claims process is lower").

- *In re Copley Pharmaceutical, Inc*., 1 F. Supp. 2d 1407 (D.Wyo.1998)(approving under *Boeing* payment of attorneys' fees from the gross settlement fund).

- *In re Crazy Eddie Secs. Litig*., 824 F. Supp. 320, 323, 326 (E.D.N.Y. 1993) (approving reversionary settlement where the court awarded $14.2 million in fees representing 33.8% of the gross amount of the $42 million settlement fund, plus $2 million in expenses, in a case where there was no trial).

- *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (holding the district court did not abuse its discretion in awarding 25% of the class judgment as attorneys' fees because under *Boeing* "attorneys' fees sought under a common fund theory should be assessed against every class members' share, not just the claiming members").

- *Koppel v. Wien*, 743 F.2d 129, 134 (2d Cir. 1984) (citing *Boeing* and stating "[i]t is immaterial to an award of attorney's fees whether beneficiaries claim or accept the benefits obtained on their behalf…").

**3. *Boeing* Applies to Settlement Classes.**

The fact that this case was resolved through a settlement claims fund rather than through a trial verdict is immaterial to the question of the applicable benchmark. Third Circuit precedent establishes that even where a case is resolved *via* settlement rather than trial *Boeing's* analysis, conclusion and principles apply. *In re Baby Products Antitrust Litig*., 708 F.3d 163, 177 n. 11 (3d Cir. 2013) (finding "the fund [in *Boeing*] was created following the determination of plaintiffs' claims rather than pursuant to a settlement…[but that] do[es] not…significantly alter[] the [*Boeing*] analysis"); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) ("Procuring a settlement, in and of itself, is never a factor that the district court should rely upon to reduce a fee award" because utilizing ". . . such a factor would penalize efficient counsel,

encourage costly litigation, and potentially discourage able lawyers from taking such cases."). *See also Sprague v. Ticonic*, 307 U.S. 161, 166–67 (1939) (fact that fund was not "formally established by litigation" not decisive as long as suit "makes a fund available for others").

Nor is the *Boeing* analysis affected by a reversion of unclaimed monies back to a defendant *via* a settlement's terms. *See Waters*, 190 F.3d 1291 (following *Boeing* with entire reversionary fund serving as basis for fee); *MGM–Pathe Commun. Co.*, 129 F.3d 1026 (same). A reversion clause is not uncommon in contested class action resolutions.[3] In *Boeing*, for example, the unclaimed funds eventually reverted back to the Boeing Company. *See Van Gemert v. Boeing Co*., 739 F.2d 730, 737 (2d Cir. 1984). Indeed, the Second Circuit *Boeing* court recognized and found that returning unclaimed funds to the defendant was "fair and equitable." *Id*. at 733. *Accord, In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 734 (3d Cir. 2001) ("[t]hough this is not a traditional common-fund case, because the unclaimed portion of the settlement fund is returned to Cendant and because the plaintiffs who recover may not be affected by the attorneys' fee award (depending on the number of plaintiffs who recover rights from the fund), use of the percentage-of-recovery method is appropriate in this case"); *Skelton v. General Motors Corp*., 860 F.2d 250, 254 n.1 (7th Cir. 1988) (disagreeing that a reversion takes the case out of a common fund category and citing *Boeing* discerning "[i]n all common fund

---

[3] As some commentators observed,"unlike cy pres or fluid recovery distributions, reverters inure to the benefit of actual class members rather than other people similarly situated by increasing the total fund available to the class." Ralph C. Ferrara, Riva Khoshaba Parker, *Tontine or Takeback: Reversion Provisions in Class Action Settlement Agreements*, 62 Bus. Law. 971 (May 2007). "Because reverters provide for the return of all undistributed amounts to defendants, defendants are likely to agree to a larger settlement fund." *Id*. "Larger settlement funds result in larger distributions per class member." *Id*.

cases, the defendant has at least 'a colorable claim' to any unclaimed monies") (*citing Boeing*, 444 U.S. 472, 481 n.7).

## III. ATTORNEYS' FEES UNDER THE SETTLEMENT ARE PROPERLY BASED ON THE ENTIRE SETTLEMENT VALUE

It is hornbook law that a trial court enjoys substantial discretion in making reasonable fee determinations. *See Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). That discretion is premised upon the district court's "superior understanding of the litigation and the desirability of avoiding frequent appellate review…" *Id.*; *see also Pierce v. Underwood*, 487 U.S. 552, 563 (1988) (holding that abuse-of-discretion standard governs appellate review of the trial court's fee determinations); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005) (finding "[t]he standards employed calculating attorneys' fees awards are legal questions subject to plenary review, but '[t]he amount of a fee award ... is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous'"). And as Justice Frankfurter recognized, "individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939).

In this case, considering *Boeing* and its progeny of decisions and commentary, there are several reasons supporting why application of the long-standing rule that the entire settlement value should be considered and used here in calculating the percentage award to Class Counsel.

### A. The Settlement made immediately available a direct, concrete, and calculable benefit, which distinguishes this case from cases emphasizing the claim rate.

The handful of courts that have rejected or deviated from application of *Boeing*-type analysis have done so because there was no concrete, determinable "current value" or "fund" upon which to calculate the fee or they have found the common fund doctrine entirely

inapplicable. *See In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 402-403 (D. Mass. 2008)(finding the distinguishing point in cases applying *Boeing* like *Waters* and *Wilhelmina* was that an actual fund was created); *see, e.g., Strong v. Bell South Telecomm., Inc.*, 137 F.3d 844, 852 (5th Cir. 1998) (no fund established and lodestar applied where the court viewed benefits as "phantom" or "illusory" akin "to settlements providing class members with coupons or certificates, where the true value of the award was less than its face value") [4]; *Bowling v. Pfizer, Inc*., 922 F. Supp. 1261, 1281 (S.D. Ohio 1996) o*n reconsideration in part*, 927 F. Supp. 1036 (S.D. Ohio 1996) a*ff'd sub nom. Arthur Ray Bowling v. Pfizer, Inc*., 103 F.3d 128 (6th Cir. 1996) *and aff'd*, 102 F.3d 777 (6th Cir. 1996) (no monetary relief starting for four years and final monetary relief realized within nine years—thus no concrete benefit realized); *Petruzzi's, Inc. v. Darling–Delaware Co*., 983 F.Supp. 595, 606, 608 (M.D.Pa. 1996) (applying

---

[4] Distinguishing *Strong*, the court in *David v. American Suzuki Motor Corp.*, No. 08-22278, slip op. at *8 n.14 (S.D. Fla. April 15, 2010), noted:

> While I recognize that the fee award requested by Class Counsel will be paid separately by Defendants and is not drawn from a "common fund" in the traditional sense, there is authority directing "district courts to exercise their equitable jurisdiction to review counsel-fee arrangements negotiated in connection with class-action settlements—even where the counsel fees are not taken from a common fund but are instead paid separately by a class-action defendant." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 4 (1st Cir.1999); *see also* Fed.R.Civ.P. 23(h). Here, unlike other cases where the common fund approach has been rejected because the non-monetary settlement's value was inflated, difficult to calculate, or illusory because of the nature of the benefits, *see e.g., Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 853 (5th Cir.1998), the value of the proposed settlement's benefits is ascertainable and has been estimated at approximately $5 million. *See* [DE 118–1]. Accordingly, I will exercise my equitable jurisdiction and determine the reasonableness of class counsel's fee award as if I were dealing with a class action settlement that generated a $5 million common fund from which a $1 million fee award has been requested.

A Copy of the slip opinion for Westlaw is supplied as Appendix A.

lodestar method where amount attributed to "common fund" was described as "phantom;" not reasonably calculable; and the defendant who [wa]s obligated to pay the fee contest[ed] class counsel's claim"). Such circumstances are clearly not present here.

As discussed at the fairness hearing and in the numerous case filings in support of the parties' settlement, the Settlement Agreement and this litigation provided significant pecuniary and non-pecuniary benefits to an ascertainable class, namely, those customers of Hertz who rented vehicles during the Class Period and paid PlatePass-Related Charges incurred during their rentals. The benefits under the Settlement are discernible and direct and reflect the contractual and disclosure liability and damage issues litigated heavily in this case. They include a segregated Common Fund of $11,004,000 "established by the defendants to pay a *direct cash benefit* to proper claimants based upon class members PlatePass transactions;"[5] and the costs of settlement administration exceeding $1,000,000.[6] As this Court noted at the Fairness Hearing: "[b]eyond this…relief, there has been, as a result of this litigation and incorporated within the terms of the settlement, a change in Hertz car rental contract terms regarding the PlatePass service provided by Hertz to its customers"[7] resulting in an amendment to the Hertz rental agreement in the way the PlatePass-Related Charges are disclosed to the benefit of the Class and future Hertz customers; and the Settlement calls for Defendants' payment of attorney fees, cost reimbursement, and Class Representatives' service awards entirely separate and apart from the Common Fund. As such, the settlement confers a total direct and concrete benefit on a class that

---

5 Hr'g. Tr. at 55 (emphasis added).

6 *Id*. at 52.

7 *Id*. at 51.

is easily ascertainable, $15,211,000, justifying using the entire settlement value as a basis for calculating a fee award.[8]

---

[8] Decisions acknowledge the fact that "[d]etermining an appropriate award…is not an exact science." *Reinhart v. Lucent Techs., Inc. (In re Lucent Techs., Inc. Sec. Litig.),* 327 F. Supp. 2d 426, 431 (D.N.J. 2004) (citing *In re Computron Software, Inc.*, 6 F.Supp.2d 313, 321 (D.N.J. 1998). Thus the facts of each case inform the amount of any award." *Id.*

A recent Third Circuit example of this principle is *In re Baby Products Antitrust Litig*., 708 F.3d 163 (3d Cir. 2013). There, in a matter of first impression concerning the use of *cy pres* distributions in class actions, the court observed that the "approach is case by case, providing courts discretion to determine whether to decrease attorneys' fees where a portion of a fund will be distributed *cy pres*." *Baby Products*, at 179. The overarching concern in *Baby Products* was whether the settlement was providing class members with concrete, direct benefits relating to the class action harm at issue that could be actually claimed by class members through reasonable effort. The *Baby Products* defendants deposited monies into a settlement fund from which eight different settlement subclasses and counsel would be paid, with the remainder – and what turned out to be the vast majority of the settlement corpus – the subject of a *cy pres* distribution. *Id*. at 170-171. While the Third Circuit did not reject the use of a *cy pres* distributions in class actions, it found "*[c]y pres* distributions also present a potential conflict of interest between class counsel and their clients because the inclusion of a *cy pres* distribution may increase a settlement fund, and with it attorneys' fees, without increasing the direct benefit to the class. Where a court fears counsel is conflicted, it should subject the settlement to increased scrutiny." *Id.* at 173. Citing *Boeing*, the Third Circuit confirmed use of the entire fund as "the appropriate benchmark" in analyzing percentages of common funds for class action attorney's fee awards. *Id.* at 177. It however continued on by noting that where and when a district court has reason to suspect that a class counsel before it has not met its responsibility to seek an award adequately prioritizing direct benefits for the class, it may decrease the fee award. *Id.* at 178. Accordingly, the *Baby Products* court vacated "the attorneys' fees award because its approval was based on the terms of a settlement that [we]re no longer in effect and may be altered on remand" and urged the court "*to consider the level of direct benefit provided to the class in calculating attorneys' fees*" leaving it *"to the District Court's discretion to assess what effect, if any, that consideration should have on any future fee award in this case*." *Id*. at 170 (emphasis supplied). Again, here the distinguishing feature of the instant settlement compared to *Baby Product's* is that the benefit bestowed upon the class here was direct, easy to obtain (with no searching or digging for information needed to apply) and rationally tethered to the liability and damage claims over the PlatePass charges being litigated.

**B. A modest claim-filing rate does not diminish the total settlement value won by Class Counsel or negate its use as a benchmark to assess Class Counsels' fees under *Boeing*.**

"The majority of class actions result in some unclaimed funds following distribution to individual class members." *In re Matzo Food Products Litig*., 156 F.R.D. 600, 606 (D.N.J. 1994). "Most class actions result in some unclaimed funds. *See, e.g.*, *Six Mexican Workers*, 904 F.2d 1301, *supra* (discussing the various alternatives used by courts for distributing such funds). "There is virtually a statistical certainty that not all class members will file statements or proofs of claim when such filing is a precondition to sharing in a common recovery." *Petruzzi's Inc.*, 983 F.Supp. *at 605* (*quoting* 2 *Newberg on Class Actions* § 10.14 (2d ed.1985)). "Of course, the risk that only a fraction of [class members] will claim is greatest if the individual claims are small." *Van Gemert v. Boeing Co.*, 590 F.2d 433, 441 (2d Cir. 1978). "Settlements of large class action suits have been approved even where less than five percent of the class files claims." *Six (6) Mexican Workers*, 904 F.2d 1301, 1306 (citation omitted).

The motivation to participate in a settlement is especially lacking when recoveries are small. *See Baby Products* 708 F.3d at 174 (observing class members in small claims cases naturally lack motivation to submit claims). As one commentator explains this phenomenon:

> [T]here are often leftover settlement proceeds in small-stakes actions because these settlements are difficult or impossible to distribute to class members. There are a variety of reasons for this: sometimes it will cost more to send class members their compensation than the judgment itself provides; sometimes the amounts class members are entitled to under the judgment are so small that they do not come forward to claim their awards; and sometimes class members cannot be located. It is not uncommon for the undistributed amounts in small-stakes class actions to total millions of dollars.

Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?*, 158 U. Pa. L. Rev. 2043, 2079-81 (2010)(internal citations omitted). Thus, "[i]n practice, a very small percentage of eligible

consumer claimants make submissions to class action claims administrators." Myriam Gilles, *Class Dismissed: Contemporary Judicial Hostility to Small-Claims Consumer Class Actions*, 59 DePaul L. Rev. 305, 315 (2010). *See also* T. Allen, *Anticipating Claims Filing Rates in Class Action Settlements*, Class Action Perspectives, Vol. III No. 2 (Rust Consulting, Inc. Nov. 2008) (noting "consumer settlements can draw a filing rate between two and 20 percent").

This small claims consumer case is consistent with these authorities. Despite the fact the Settlement returned substantial percentages of the disputed PlatePass- Related Charges at issue (67% of the charges associated with Class Members' first Hertz car rental encounter with PlatePass- Related Charges and 38% of all subsequent encounters) and the average refund was approximately $7.70, Class Members' utilization rate was 6.2%. The fact that utilization was low, however, does not mean Class Counsel are not entitled to a fee award based on the benefit that their labors created for the benefit of all Class Members. Each Class Member has had a present vested interest in the $11 million Common Fund established by the Settlement, and each could collect his or her share of the fund upon request. Thus, under *Boeing* absentee Class Members have received a benefit within the meaning of the common-fund doctrine.

**1. *Boeing* distinguishes creation of benefits from their utilization by beneficiaries, awarding fees based on benefit creation.**

One of the key class action law principles *Boeing* established is that for purposes of determining class action attorney's fees there is an important distinction between class counsels' winning a benefit for class members and the subsequent utilization of that benefit by class members. In affirming the Second Circuit's decision (590 F.2d 433), the U.S. Supreme Court emphasized that by making monetary relief available to class members a benefit is conferred on each and every class member, regardless of whether they ultimately submit a claim. According to

*Boeing* the "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit ... created by the efforts of the class representatives and their counsel." 444 U.S. at 480.

This is logical and fair. Indeed, even in an individual bilateral action, an attorney may win a monetary award for his or her client but the client may never cash the check. In that case, it would hardly be logical or equitable to not provide the attorney the full agreed-upon percentage of the monetary award. The same holds true in class actions; but class actions prove exceedingly more difficult in this respect because they entail a multitude of persons whose motivations and inclinations for taking advantage of a benefit that has been conferred may and do vary widely. As noted above, this is especially true in small-value class action such as this consisting of over 1.6 million class members whose average damage is less than $10.[9] *Boeing* however confirms fundamentally that non-acceptance of a conferred benefit by class members does not diminish the settlement's value for assessing attorney's fees and fees are to be awarded on the total value created.

**2. This class action settlement created direct monetary class benefits and implemented measures to facilitate benefits utilization by Class Members.**

"The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, *whose efforts create, discover, increase, or preserve a fund* to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Gen. Motors*

[9] "Anecdotal evidence suggests that these [small-value] claims very often concern less than $100 per plaintiff." Myriam Gilles & Gary B. Friedman, *Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers*, 155 U. Pa. L. Rev. 103, 132 (2006). Small-claims actions can be defined to "include[e] virtually all consumer class cases, and many claims arising under banking, insurance, and other laws," but exclude "employment, antitrust, and securities actions, and virtually all mass tort class actions." *Id*. at 104 n.5.

*Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 820 n. 39 (3d Cir. 1995) (emphasis supplied). That said, neither counsel, nor any party, nor the court can guarantee that all (or even a majority) of potential members will participate by submitting claims against the fund *created, discovered, increased, or preserved*. Thus, the touchstone used to evaluate small-value consumer class settlements with respect to both substantive Settlement and fee requests is not whether all, or even a majority of, eligible class members submit claims; but rather whether (1) the benefits under the settlement are fair, reasonable and adequate; and (2) whether reasonable mechanisms were put in place that (a) provided potential class members with a good opportunity under the circumstances to participate in the class action benefits; and (b) guarded against conflicts of interest between class counsel and class members and collusion between class counsel and defendants.

The Court has already determined the Settlement's substantive relief terms are fair, reasonable and adequate. The record further establishes that appropriate and reasonable measures were taken to give notice of the settlement and provide an easy, user-friendly claims application process. Likewise, the record establishes that the counsel for the parties, under the auspices of a mediator, retired Magistrate Judge Joel Rosen, took and followed appropriate steps to guard against conflicts of interest. Also, there is no indication whatsoever there was any collusion among the parties in negotiating the terms of the Settlement Agreement or in negotiating the separately agreed-to class counsel and class representative fees.

*First,* and most importantly, on this point as observed during the Fairness Hearing, no evidence exists indicating any individual or class claims "have been compromised in order to

maximize or increase the amount of counsel fees."[10] There is absolutely no sign or indication here that Class Counsel sold out the Class by creating a cumbersome claims process that would likely produce little claims from the Common Fund. Settlement notices were mailed to class members that notified them of the settlement and explained the claims process. The Settlement provided Class Members with a money refund, not a coupon. The claims process itself was simple, not complicated: completing a short online claim form (or alternatively mailing a paper claim form) that took a minute or so to complete. Class Members did not even have to dig out records to make claim as the claims administrator provided potential known Class Members with a statement of their transactions from Hertz's and ATS's records that qualified them to receive a refund. While one might argue the Parties could have implemented a simpler alternative process — just mailing out checks to all Class Members — that was not really a practical alternative here. Current addresses were not available for many class members. Hertz's PlatePass records regarding payments were also not entirely complete.[11] Hence the potential for mistake or fraud might have been significant absent a claims process. Additionally, the liability claims against Hertz and ATS involved alleged non-disclosure of Plate-Pass terms, claims that were hotly contested by Defendants during negotiations. As a result, Defendants insisted on Class Members' confirming their Class memberships by, among other things, checking appropriate boxes on the claims forms regarding absence of knowledge of the PlatePass program and its charges. All in all, the lack of Class Member utilization here therefore is most likely attributable to the small size of the resulting check (a function of the nature of the underlying small-value

---

[10] Hr'g. Tr. at 64.

[11] Dkt. 98-3 at ¶ 26 (Declaration of Steven R. Jaffe).

transactions) that inherent class member inertia could not overcome and was not due to any hurdles the settling parties erected.

*Second*, Class Counsel negotiated fees only after Class relief was agreed. The Third Circuit has endorsed this approach as a way to avoid conflicts of interest that can arise in class settlements.[12]

*Third*, the benefits that Class Counsel secured for Class Members are not illusory— they include direct monetary payments that exist to satisfy the claims of any and all Class Members who file a claim. The Settlement does not include a *cy pres* distribution or other provision that may illusorily increase a settlement fund, and with it attorneys' fees, without increasing the benefit to the class, which troubled the Third Circuit recently in *In re Baby Products Antitrust Litig*., *supra*. The Settlement in this instance calls for a segregated Common Fund of $11,004,000 "established by the defendants to pay a *direct cash benefit* to proper claimants." The establishment of the fund insured that there was sufficient money to pay each and every class member who came forward and completed a claim for their share. Although the full $11,004,000 will not be claimed, no Class Member's individual recovery is thereby decreased. By the same token, under the Settlement, fewer claim submissions does not equate to more fees for Class Counsel.[13] Negotiating the $11,004,000 Common Fund, therefore, "created a benefit

---

[12] Dkt. 98-3 at ¶ 22; *see In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 335 (3d Cir. 1998) (affirming no conflict based on District Court's finding "the parties obviated the danger of an actual or apparent conflict of interest on the part of class counsel by negotiating" fees after class relief and citing preference for this procedure).

[13] *See* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237, 251 (1985) (noting "[w]hen a large attorney's fee means a smaller recovery to plaintiff, a significant conflict of interest between client and attorney is created").

on behalf of the entire class." *Waters*, 190 F.3d at 1297. As the Court here observed: "[o]verall, it seems…that there is an overwhelmingly positive reaction to the settlement by the class members and all parties involved…."[14]

*Fourth*, the monies to be paid to Class Counsel are "entirely independent of money awarded to the class," thus reducing a "potential conflict of interest between attorneys and class members" over the same pool of money.[15] In this circumstance, this Court recently found that "the Court's fiduciary role in overseeing the award is greatly reduced."[16]

*Fifth*, the record demonstrates that the Parties pursued their opposing positions zealously and comprehensively and after significant discovery over four years of litigation.[17] The Third Circuit has discussed that a quick settlement with little or no discovery can be a storm warning of collusion or conflicts of interest.[18] That concern is not present in this action.

---

[14] Hr'g. Tr. at 74.

[15] *See Rossi v. Proctor & Gamble*, 2013 U.S. Dist. LEXIS 143180, at * 26-27 (D.N.J. Oct. 3, 2013) (*citing McBean v. City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2006)); *see also* Hr'g. Tr. at 74 (the Court's finding "[t]he fees, costs, and awards to representative plaintiffs, as discussed earlier, are separate and apart from the amount of the common fund. So that attorneys' fees, which the Court may award, the separate provision for costs advanced by plaintiffs' counsel, class counsel, and the awards to representative plaintiffs that we discussed do not diminish or make unavailable for -- diminish the common fund or make those amounts unavailable to claimants").

[16] *Id*.

[17] Dkt. 98-3 at ¶¶ 4-18.

[18] *See generally In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995). When a settlement such as this one results from "arm's length negotiations between experienced counsel after significant discovery ha[s] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citations omitted).

*Sixth*, an experienced mediator, retired Magistrate Judge Rosen, oversaw the settlement negotiations.[19]

*Seventh*, opt-out notice and Class Counsels' fee application, including specific reference to the fee amount, were widely disseminated by a neutral professional settlement administrator.[20]

***

In *In re Baby Products, supra*, the Third Circuit observed that "[t]here are a variety of reasons that settlement funds may remain even after an exhaustive claims process—including if the class members' individual damages are simply too small to motivate them to submit claims." 708 F.3d at 178. This Court has likewise acknowledged that many class members may not participate in the benefits made available, either through neglect or forgetfulness, but (and critical for the analysis here) that does not diminish the value of the benefit created. *Alin*, 2012 U.S. Dist. LEXIS 188223, at *56-57 (citing *Boeing* and *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 n.5 (D.N.J. 1995)).

Nor does the inevitable lack of participation in small claim consumer class actions alter the conclusion that attorneys' fees should be assessed against the entire fund. In *Alin, supra,* this Court specifically found that despite a lack of class member claims submission, the total fund amount served as the benchmark for calculating attorneys' fees as a percentage of the common

---

19 *See, e.g., Adams v. Inter-Con Sec. Sys., Inc.*, 2007 U.S. Dist. LEXIS 83147, at *9 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, 2003 U.S. Dist. LEXIS 17090, at *13 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

20 Dkt. 114 (administrator's affidavit describing notice process).

fund:

> Unlikely as it may be that all class members will avail themselves of the [settlement benefit], the common-fund doctrine 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense, and that '[j]urisdiction over the fund involved in the litigation allows a court to prevent this inequity *by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit*.' *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) (emphasis in original); *see also Weiss v. Mercedes-Benz of N. Am*., 899 F. Supp. 1297, 1304 & n.5 (D.N.J. 1995) (Bissell, J.) (in making fee calculation based on premise of full participation, noting that "[s]hould a class member either forget or choose not to use his certificate [awarded in the settlement], that would diminish the financial impact upon [defendant], but not the present value of the settlement to the class").

*Alin*, *supra*, at 56-57. As one court succinctly stated, "the value of legal service rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Alleyne v. Time Moving & Storage Inc*., 264 F.R.D. 41, 59 (E.D.N.Y. 2010). And in *Martina v. L.A. Fitness Int'l, Inc*., 2013 U.S. Dist. LEXIS 145285 (D.N.J. Oct. 8, 2013), this court recently echoed this observation, finding that counsels' fees may exceed the value of claim submissions,[21] but that should not diminish the value of counsel's services or serve as a justification for reducing counsel's requested fee:

> The Settlement is worth as much as $3.8 million and benefits as many as 46,000 New Jersey consumers. Counsel, who have substantial class action experience, secured this result quickly and efficiently, after less than two years of litigation. Unfortunately, class members have claimed cash and coupons worth only $68,000, creating a distasteful scenario where the fee awarded to counsel ($200,000) exceeds the value of the relief which class members have claimed by a factor of three. **But that blame must ultimately lie with the duly notified class members. Counsel's labors have been fruitful and their request is modest, so it is granted**.

---

[21] *See Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291 (11th Cir.1999) ($40M settlement fund; $13.3M in fees upheld; but only $6.4M in class member payments from the fund).

*L.A. Fitness*, 2013 U.S. Dist. LEXIS 145285, at *24-25 (emphasis supplied).

Thus while limited utilization rates are to be expected in small-value consumer class action settlements, that fact does not diminish the total settlement value achieved here by Class Counsel. Importantly, a modest actual utilization rate must not be allowed to negate and displace the total value's use as the benchmark, in assessing Class Counsels' fees as *Boeing* prescribes; especially where, as here, the Parties entered a settlement at arm's length that took measures to ensure that Class Members were given a full and fair opportunity to participate *via* an easy to access, user-friendly claims process.

### C. If actual claims total is the benchmark, Class Counsel will be unjustifiably punished in this case and counsel for plaintiffs in the future will shy away from other important small-claim class actions.

In the face of the parties' negotiating a fee here that is separate and apart from the common fund payments to the class, tying the ultimate fee award to the value of the claims made unfairly and unnecessarily penalizes class counsel. As stated in *Baby Products*, *supra*, the Third Circuit observed: "[t]here are a variety of reasons that settlement funds may remain even after an exhaustive claims process—including if the class members' individual damages are simply too small to motivate them to submit claims." 708 F.3d at 178. The court went on to state: "Class counsel should not be penalized for these or other legitimate reasons unrelated to the quality of representation they provided. Nor do we want to discourage counsel from filing class actions in cases where few claims are likely to be made but the deterrent effect of the class action is equally valuable." *Id*. at 174. Yet this is precisely what will happen if the amount of claims made — the "benefit utilization" method — is employed here for benchmarking Class Counsel's fee awards. This settlement was crafted to provide a concrete, direct benefit to claiming Class Members and

exhibits all of the recommended, time-honored mechanisms for preserving Class Members' rights and encouraging their participation. Indeed, the pre-population of Class Member's claim forms online and paper claims forms represents the current state-of-the-art in claims administration. Class Counsels' adherence to the strictures of best class action standards and practices for classes they represent should be encouraged, not punished.

While the "benefit utilization" approach may have some intuitive appeal, it does not comport with the needs and reality of class action practice. Class representative litigation is very different than bilateral litigation, given, as noted above, control over the whims and motivation of thousands or perhaps millions of class members to file claims is totally lacking. In this vein, the Second Circuit's *en banc Boeing* decision observed that a rule pegging class counsels' fees to actual claim rates in monetary distribution situations would unduly penalize both claiming class members and class counsel. *Van Gemert*, 590 F.2d at 440-41. To award class counsel a reasonable fee bearing some mathematical proportion to their effort, courts would be forced to reduce disproportionately the share of the claiming class members in order to cover a fee that could be taxed only against those claimants' shares. *Id*. On the other hand, protecting claiming class members by limiting class counsel fees to a fixed percentage of the fund actually claimed would make the resulting fee entirely dependent on the number of plaintiffs who came forward – notwithstanding the difficulty of the case, the quality of representation or the hours devoted by class counsel to achieving the recovery rights. *Id*. at 441. The *Gunter/Prudential* analysis which examines the "appropriate percentage of [a common fund] to award attorney fees based *on a*

*series of reasonableness factors*"[22] would thus be either skewed or fall entirely by the wayside.

The *Boeing* Second Circuit court further noted that because the number of plaintiffs who come forward to claim their shares is unpredictable, class counsel would be discouraged from pursuing class suits, regardless of the merits of the case. *Id*. at 435, 441. Tying attorney's fees to the claims rate places too much weight on a factor that is difficult for class counsel to predict and impossible for them to control:

> [B]y limiting the attorney to a fixed percentage of the judgment actually claimed, the resulting fee would be entirely dependent on the number of plaintiffs who came forward. Considerations of the difficulty of the case, the quality of representation, and the hours spent by the attorney, would not determine the ultimate size of the fee. Nor can the attorney always determine whether it would be worthwhile for him to undertake the risks of litigation, for the number of plaintiffs who will come forward after judgment is often unpredictable. Of course, the risk that only a fraction of plaintiffs will claim is greatest if the individual claims are small.

*Van Gemert v. Boeing Co.*, 590 F.2d 433, 441 (2d Cir. 1978) (*en banc*), *aff'd*, 444 U.S. 472 (1980).

The effect of under-compensating class counsel by providing counsel with a portion of what is actually claimed may yield such a small award that class action plaintiff attorneys in the future will shy away from taking on meritorious small claims cases. The pursuit of class actions is critical if large population, small-claim class harms are to be remedied. The Court's opinion in this regard accordingly can have far-reaching and perhaps unintended implications and an outright chilling effect that would not serve the best interests of consumers here and in other cases.

---

[22] *In re Diet Drugs Product Liability Litig.*, 582 F.3d 524, n.24 (3d Cir. 2009)(emphasis supplied).

Nearly 40 years ago, the U.S. Supreme Court stated that where individual claims are for small amounts of money, the class action device is often the sole means by which individuals may receive compensation—solving what some scholars refer to as the "collective action" or "*negative value*" problem:

> A critical fact in this litigation is that petitioner's individual stake in the damages award he seeks is only $70. No competent attorney would undertake this complex anti- trust action to recover so inconsequential an amount. **Economic reality dictates that petitioner's suit proceed as a class action or not at all.**

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 161 (1974) (emphasis supplied.). In *Deposit Guar. Bank v. Roper*, 445 U.S. 326, 339 (1980), the Supreme Court furthered this observation:

> The aggregation of individual claims in a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of the government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.

Similarly, in *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 617 (1997), "[w]hile the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" (citation omitted).

The need to simultaneously level the playing field and provide impetus for qualified counsel to come forward and undertake prosecution of meritorious small small-value cases expressed in these Supreme Court decisions are especially acute in class actions based on violations of state deceptive or unfair trade practices acts, such as here, the New Jersey's

Consumer Fraud Act. The nature of violations of these consumer protection statutes is that they often do a small amount of financial harm to a large number of people.[23] Using the actual claims made rates and amounts to base a class counsel's fee award would subvert the values and policies of consumer law and those underlying Rule 23 that are furthered by active pursuit of small claims consumer class actions. The small size of consumer protection act claims (for example here the claim average amount of the claims being paid from the settlement fund is $7.72), make them particularly undesirable for most attorneys. Thus, a class action is in many ways the only means of redress for these claimants given that state or national level litigation requires an enormous investment of time and resources with almost no guarantee that counsel will recoup most or any of this investment. *See In re Copley Pharmaceutical, Inc.*, 1 F.Supp.2d 1407, 1414 (D.Wyo. 1998). This type of class action should be encouraged, not discouraged, by application of an unrealistic "claims made" fee calculation methodology tied to claimant utilization.

### D. If Total Actual Claims Made Rates is used as the Benchmark for Awarding Class Counsel's Attorney Fee Awards, the Deterrence Function of Rule 23 Will be Undermined in this Case and Others.

"Small claims consumer class actions…provide benefits beyond simply compensating the injured individual class members …"[24] They deter wrongdoing[25] and deterrence is viewed as

---

[23] *See FTC Policy Statement on Unfairness* appended to *In re Int'l Harvester Co.*, 104 F.T.C. 949, 1070-76 (1984) (stating consumer "injury may be sufficiently substantial, however, if it does a small harm to a large number of people, or if it raises a significant risk of concrete harm").

[24] Hailyn Chen, *Attorneys' Fees and Reversionary Fund Settlements in Small Claims Consumer Class Actions*, 50 UCLA L. Rev. 879, 883 (2003). (cited as "*Chen*").

[25] *Id.*

a primary goal of small-claim class actions.[26] *See Exxon Shipping Co. v. Baker*, 554 U.S. 471,512-515 & n.28 (2008) (Supreme Court's observation that class actions function to incentivize litigation and achieve deterrence—such that the need for punitive damages may retreat where the class suit is available); *cf. A & L Indus. v. P. Cipollini, Inc.*, 2013 U.S. Dist. LEXIS 142463, at *17-18 (D.N.J. Oct. 2, 2013)(expressing skepticism that "the possibility of numerous individual suits deters TCPA violations as effectively as an aggregated class action");[27] *Solo v. Bed Bath & Beyond, Inc.*, 2007 U.S. Dist. LEXIS 31088, at *5 (D.N.J. Apr. 26, 2007)(noting that the New Jersey Consumer Fraud Act was enacted to deter consumer fraud). When injured victims' harms are small and dispersed, defendants can avoid liability because no individual has sufficient incentive to sue. By avoiding liability, defendants place the social costs of their actions on others. In enabling aggregation and prosecution of small-claim suits, class actions expose defendants to the risk of liability and thereby deter them from engaging in wrongdoing in the first place. Class actions thereby provide an important private supplement to public enforcement of social norms.

Furthermore, consumer class actions often lead to institutional change, evidenced in this case by an amendment to the Hertz rental agreement in the way the PlatePass-Related Charges

---

[26] *Id* at 892 ("Limiting class counsel to a fee based on a percentage of what class members actually claim will, in many instances, result in a fee that is so small as to prevent class action attorneys from pursuing such cases, which serve primarily a regulatory and deterrent function, not a compensatory function."); *see also* Myriam Gilles & Gary B. Friedman, *Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers*, 155 U. Pa. L. Rev. 103 (2006).

[27] *See also Gammon v. GC Services Ltd. P'ship*, 162 F.R.D. 313, 321 (N.D. Ill. 1995)(finding "[c]lass actions were designed not only to compensate victimized members of groups who are similarly situated ... but also to deter violations of the law, especially when small individual claims are involved")(citation omitted).

are disclosed. Small claims consumer class actions also alert the public to the possibility of fraudulent or deceptive practices by others. The allegedly unfair trade practice violations and breaches of contract pled in this case might have escaped notice unless Class Counsel had an incentive to investigate and pursue this small value claims class action—an incentive such as the availability of fees as a percentage of the total Common Fund[28] consistent with prevailing law based on *Boeing* and its progeny. Because deterrence and notice are primary functions of small value claim cases like this, class-action counsel must have sufficient incentives to take on the financial risks involved in such cases.

**E. If the actual claims total is the benchmark, class settlements will be less likely and classes will not necessarily be better served.**

Rule 23 expressly authorizes that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law *or by the parties' agreement*." *Rossi v. Proctor & Gamble*, 2013 U.S. Dist. LEXIS 143180, at *25 (D.N.J. Oct. 3, 2013)(citing *Fed. R. Civ. P.* 23(h)(emphasis supplied) "The Supreme Court has suggested that such agreements should be encouraged as a matter of public policy." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 106 F. Supp. 2d 721, 722 n.1 (D.N.J. 2000)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "In light of this recognized principle, Courts routinely approve agreed-upon attorneys' fees, particularly when the amount is independent and does not impact the benefit obtained for the class." *Pro v. Hertz Equip. Rental Corp.*, 2013 U.S. Dist. LEXIS 86995, at *16-17 (D.N.J. June 20, 2013); *see Local 56, United Food and Commercial Workers Union v. Campbell Soup Co.*, 954 F. Supp. 1000, 1005 (D.N.J. 1997)(granting class counsel the maximum amount of fees

---

[28] *See* Chen, 50 UCLA L. Rev. at 898.

agreed to by defendant under the settlement agreement, where "class members . . . retain all that the settlement provides [and] do not lose any of the negotiated benefits on account of an attorneys' fee and costs award that equals the 'cap' on such an award set forth in the settlement"). Where, however, a court may be inclined to consider disregarding the parties' arms' length agreement on attorney's fees and instead tied the award in small-claim settlements to the total amount actually claimed by class members, there are several reasons why the policies favoring class settlements and fee agreements are undermined and disrupted to the ultimate detriment of the class members.

*First*, "[w]hen compensation arrangements are unsettled, it is hard for class counsel to predict the impact that litigation investments will have on fees. Because attorneys are averse to risk, this uncertainty discourages them from maximizing the value of absent plaintiffs' claims."[29] To avoid the inevitable unpredictability of small-value claims submission rates, counsel will surely be incentivized to only seek a fixed amount based on a fixed sum distribution, which will mean a defendant will be forced to only make absolute payments out of a fixed fund if it wishes to settle. In a small claims case such as this that involves over 1 million potential members, this is not workable for manifold reasons. It greatly increases the cost and complexity of claims administration. For another thing, often not all class members' names and addresses are known. Notice on the Internet and via publication is thus frequently necessary. It is also not practical because payment records relating to class members often are unavailable and where they are

[29] Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809, 1837 (2000).

available they often are not complete. A claims process is therefore required to maximize potential distribution of a fixed Common Fund and guard against fraud.

*Second*, if a settlement requires full distribution of an entire fixed fund, the defendant will likely offer to settle for a far smaller amount per claim, rather than a higher amount for only those that come forward (given the common awareness that historically all small-claim class members do not submit claims for a host of reasons having nothing to do the efforts of class counsel or the parties' efforts to ensure a robust, fair claiming process).

*Third*, a ruling requiring full distribution of an entire fund would be a disincentive to defendants and plaintiffs to settle and to, instead, take an all-or-nothing approach to class litigation. This approach would delay or perhaps deny relief in a risky but worthwhile case that otherwise may be immediately available to class members through settlement.

*Finally*, the only parties in the end who will be benefitted by disregarding agreed upon counsel fees, especially where, as here, they are paid separate from and over-and-above the compensation being paid to the class, will be defendants. Computation under that benchmark will result in the defendant being relieved from paying the market rate for class counsel's services to the class. *See, e.g., In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992); *Henderson v. Volvo Cars of N. Am., LLC,* 2013 U.S. Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013); *In re Philips/Magnavox TV Litig*., 2012 U.S. Dist. LEXIS 67287 (D.N.J. May 14, 2012*); McGee v. Cont'l Tire N. Am., Inc*., 2009 U.S. Dist. LEXIS 17199 (D.N.J. Mar. 4, 2009); *In re Ins. Brokerage Antirust Litig.*, 2007 U.S. Dist. LEXIS 40729 (D.N.J. June 5, 2007). This approach would thus also ultimately undermine the restorative and deterrent effects of class action settlements, to the detriment of victimized consumers and other small-value claimants.

**IV. NO DISABLING CONFLICT ARISES NOR EXISTED IN THIS MATTER BY REASON OF A FAMILY RELATIONSHIP BETWEEN A CLASS REPRESENTATIVE AND FORMER COUNSEL**

At the hearing on October 15, 2013, the Court also requested briefing on whether the relationship between Class Representative Plaintiff Susan Doherty and her brother, attorney Donald Doherty, as well the compensation to be paid to his firm, should be considered by the Court in connection with Class Counsels' motion for agreed-upon fees [Dkt. 106]. Review of applicable Third Circuit authority reveals there is no rule *per se* disqualifying a class representative or his/her counsel by reason of a family or business relationship between the representative and class counsel.

Where a family relationship exists between a class action representative and class counsel, the pivotal issue, which trains on the adequacy of representation element of Rule 23(a), is whether the family relationship is likely to create a conflict compromising a class representative's ability to objectively fulfill the fiduciary duty of faithfully prosecuting the action on behalf of the class. The underlying concern is whether the financial interest of the class representative conflicts with those of the class. *Lewis v. Goldsmith,* 95 F.R.D. 15, 20 (D.N.J.1982) (the fact that plaintiff is the nephew of class counsel, alone, was insufficient to disqualify him as a class representative); *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 245 (D.N.J. 2008) ("the existence of a relationship between the named plaintiffs and members of counsel's firm, in the absence of proof that the named plaintiffs would receive a benefit not available to other class members, is not a basis to find that the law firm cannot adequately represent the class").

Early cases addressing these issues found that business and personal relationships would not preclude certification because adequate safeguards against unfair compromises were

provided by Rule 23(e). *Umbriac v. American Snacks, Inc*., 388 F. Supp. 265, 275 (E.D. Pa. 1975) (addressing a class representative being represented by his law partner, the Court wrote, "the safeguard provided in Rule 23(e) against litigation compromises unfair to the class as a whole are adequate to insure protection of class interest under the representation of these named plaintiffs and counsel."); *Fischer v. International Tel. & Tel. Corp*., 72 F.R.D. 170 (E.D.N.Y. 1976) (finding, in context of father-son relationship and upon review of cases where business and personal relationships with class counsel were considered, the touchstone for denial of class certification on adequacy of representation grounds is whether the Plaintiff might have an interest in the legal fees the attorney may seek.). Some subsequent courts have questioned whether judicial oversight is sufficient. *Cohen v. Bloch,* 507 F. Supp. 321, 325 (S.D.N.Y. 1980) ("judicial oversight is not a realistic substitute for enforcement of the fair and adequate representation requirement."); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 310 (D. Mass. 1987) ("father-son relationship and the active involvement and heavy reliance on the son create an unnecessary risk of conflict between the representative plaintiff and other class members"). New Jersey District Courts, however, continue to follow the principle enunciated in *Lewis*, and find, in the absence of evidence of a conflict compromising a representative's loyalty to the class, a personal relationship with a member of the law firm representing named plaintiffs does not, standing alone, warrant a finding of undue reliance upon counsel. *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 398 (D.N.J. 1998).

Here, after learning that in connection with a Hertz car rental she had been charged administrative fees under Hertz's PlatePass program that she was unaware of and had not agreed to pay, Ms. Doherty understandably engaged her brother's law firm, Friedman Doherty, and in particular his partner, Sander Friedman, to file and prosecute this action. The case was then

actively (and successfully) litigated by Mr. Friedman and an associate up to and through motion to dismiss proceedings.

In similar fashion Plaintiff Dwight Simonson after learning he had been charged PlatePass administration fees he had not to his knowledge agreed to pay consulted his son-in-law attorney who was employed then as an associate in the Raleigh, North Carolina law firm of Emanuel & Dunn, and engaged Emanuel & Dunn, along with the firm of Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L. ("Farmer Jaffe") and Cohen, Placitella & Roth, PC ("CPR") (collectively "Class Counsel"), to file an action in New Jersey against Hertz and ATS. Mr. Simonson's son-in-law left Emanuel & Dunn in October 2010, three months after the case was filed, and Mr. Simonson elected in writing under procedures required by the State Bar in North Carolina to retain the employ of Emanuel & Dunn, who continued to co-counsel the matter with Famer Jaffe and CPR.

In July 2011, the Doherty and Simonson cases were consolidated, at which time the Doherty action was taken over completely and pursued by Class Counsel. At that time the Friedman Doherty firm, with Ms. Doherty's knowledge and consent, referred Ms. Doherty case over to Christopher M. Placitella of CPR and withdrew from the matter. Mr. Placitella is a Certified Civil Trial Attorney under N.J. Rule 1:39-5. Pursuant to Rule 1:39-5 he is authorized to pay referral fees to referring counsel. In view of Friedman Doherty's work and the success then to date, it was agreed that, subject to court approval if required, a referral fee of 25% of any attorneys' fee generated in the Hertz PlatePass Litigation awarded to and received by Class Counsel would be paid to the Friedman Doherty firm.

Following consolidation, neither Mr. Friedman nor Mr. Doherty undertook an active role in the litigation. Ms. Doherty and Mr. Simonson, on the other hand, have been very active

involved as Class Representatives in all aspects of the litigation along with Class Counsel in the active pursuit of the class members' interests. Both were fully vetted by Defendants in two full days of deposition testimony. Neither Ms. Doherty nor Mr. Simonson received or were promised any form of compensation, directly or indirectly, for prosecuting, serving as a representative or settling this action. *See Affidavit of Susan Doherty,* ¶ *4; Affidavit of Dwight Simonson,* ¶ *4.* Neither Ms. Doherty nor Mr. Simonson were aware of, concerned or motivated, by what economic benefits, if any, would be respectively received by Ms. Doherty's brother's law firm or by Mr. Simonson's son-in-law. Each prosecuted the case faithfully and diligently in their own right and on behalf of the class. Moreover, each class representative plaintiff consulted with and was counseled and represented by two completely independent firms, Farmer Jaffe and CPR, both of which never at any time had a family relationship with either.

In all events, under the precedent cited above, the fact that Ms. Doherty's brother or Mr. Simonson's son-in-law may derive some economic benefit does not, in and of itself, disqualify Sander Friedman, Donald Doherty, or the law firm of Emanuel & Dunn. The Court's consideration of the possibility of a conflict is sound, but here, there is no evidence, indeed not even a hint, that the class's interest has been compromised. Nothing at all here suggests an appearance of collusion or impropriety, and the terms and conditions of settlement, as noted by the Court, are fair, adequate and reasonable. Hr'g. Tr. at 64.

## V. CONCLUSION

For all of the forgoing reasons, Class Counsels' Petition for fee awards and cost reimbursement should be granted as requested using the percentage of the total settlement value,

and not the amount of claims submitted, and the allocation of fees among counsel, as they have agreed upon without the input from the class representatives, should be given deference.

A schedule of proposed allocation is being submitted by separate document.

Respectfully Submitted :

DATED: December 3, 2013.

__/s/ Michael Coren__________
Christopher M. Placitella, Esq.
Michael Coren, Esq.
COHEN, PLACITELLA & ROTH, PC
127 Maple Avenue
Red Bank, NJ 07701-1717
(732) 747-9003
*Attorneys for Plaintiffs and the Class*

Of Counsel:

Steven R. Jaffe, Esq.
Mark S. Fistos, Esq.
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
(Admitted *pro hac vice*)
*Attorneys for Plaintiffs and the Class*

Stephen A. Dunn, Esq.
EMANUEL & DUNN, PLLC
Post Office Box 426
Raleigh, North Carolina 27602
(919) 832-0329
(Admitted *pro hac vice*)
*Attorneys for Plaintiffs and the Class*